**H.C. BAILEY, Jr., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 92–577C, 92–817C.**

United States Court of Federal Claims.

Aug. 14, 2002.

Mary C. Gill, Atlanta, GA, counsel of record for shareholder plaintiffs, Alan W. Perry, Jackson, MS, of counsel.

William F. Ryan, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for defendant, with whom were Jeanne E. Davidson, Assistant Director, David M. Cohen, Director, Stuart E. Schiffer, Deputy Assistant Attorney General, James L. Anderson, Gregory R. Firehock, Daniel D. McClain, Thomas P. Reilly, Patricia A. Smith, of counsel.

## OPINION

DAMICH, Chief Judge.

Before the Court are the Shareholder Plaintiffs' motion for partial summary judgment on their taking claim and Defendant's cross-motion for summary judgment as to the Plaintiffs' taking claim. On April 12, 2002, the Court granted Defendant's cross-motion as to takings with respect to the Federal Deposit Insurance Corporation ("FDIC") and dismissed the FDIC from the consolidated proceedings. For the reasons discussed below, the Shareholder Plaintiffs cannot establish that any property right was taken. Therefore, the Shareholder Plaintiffs' motion for partial summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

## I. Background

This is a long-standing *Winstar*-related case. The remaining plaintiffs are the shareholders of the failed Security Savings and Loan Association of Jackson, Mississippi ("Security Savings"). Previously, this Court has held that the Federal Savings and Loan Insurance Corporation ("FSLIC") breached contractual obligations that permitted Security Savings to count supervisory goodwill and certain other items, including FSLIC cash contributions and income capital certificates ("ICCs"), in computing its regulatory capital requirements. These contractual commitments were breached by the passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183, and its implementing regulations. These contracts are discussed in further detail in the Court's opinion in *F.D.I.C. v. United States*, 47 Fed. Cl. 2, 4–5 (2000) (*"FDIC I"*). The Shareholder Plaintiffs have standing in this case to pursue their "direct, vested interest in the surplus of potential recoveries." *F.D.I.C. I*, 47 Fed.Cl. at 6 (quoting *Plaintiffs in All Winstar–Related Cases at the Court v. United States*, 44 Fed.Cl. 3, 10 (1999)). The FDIC appeared in this case as the successor-in-interest to Security Savings.

On December 21, 2001, this Court held that both the FDIC and the Shareholder Plaintiffs could not pursue their contractual claims. *F.D.I.C. v. United States*, 51 Fed.Cl. 265 (2001) (*"FDIC II"*). The FDIC lacked standing because, as manager of the FSLIC Resolution Fund ("FRF") which owns the damages claim of the failed Security Savings and is also the largest creditor of the Security receivership, it could not present any theory of damages in its contractual claim that exceeded the FRF's subrogated claim against the Security receivership. *FDIC II*, 51 Fed.Cl. at 272–73. The FDIC damages claim did not exceed the FRF's claim against Security because, in part, the FDIC also could not recover for the receivership deficit of Security. The receivership deficit consists of the shortfall that occurred after Security

Federal Savings and Loan Association ("Security Federal")—the successor of Security Savings that was operated under Resolution Trust Corporation ("RTC") conservatorship—was liquidated and after the RTC made deposit insurance payments for the benefit of the former depositors of Security Federal plus interest and tax liability. *FDIC II*, 51 Fed.Cl. at 269–70.

Because the FDIC lacked standing to pursue its damages claim, no surplus of recovery existed. Therefore, the Court ruled that the Shareholder Plaintiffs' contract claim, which was predicated on the existence of surplus recoveries, was extinguished. *FDIC II*, 51 Fed.Cl. at 273.

On April 12, 2002, this Court held in an unpublished opinion that the FDIC did not possess standing to pursue its taking claim because it could not present any theory of damages in its taking claim that exceeded the FRF's subrogated claim against the Security receivership. In addition, in the absence of contestation of the FDIC, the Court also dismissed the FDIC's due process claim against Defendant. The Shareholder Plaintiffs' taking claim is the only claim remaining in these consolidated proceedings.

## II. Shareholder Plaintiffs' Taking Theory

The Shareholder Plaintiffs present an unusual taking claim in which the interaction of certain provisions of FIRREA, the statutory priority scheme set forth in 12 U.S.C. § 1821(d)(11)(A) in which proceeds from failed thrifts collected by the FDIC, as manager of the FRF, are distributed, and several decisions by the U.S. Court of Appeals for the Federal Circuit and the Court of Federal Claims which have held that the FDIC cannot recover damages that are owed to the FRF, such as the receivership deficit,[1] combined together resulted in the taking of the contractual remedy to which the Shareholders were entitled. First, as stated above, FIRREA and its implementing regulations breached FSLIC's contractual obligation to Security Savings' goodwill claims. In addition, FIRREA abolished the breaching party

---

1. *See Glass v. United States*, 258 F.3d 1349 (Fed. Cir.2001); *Landmark Land Co. v. United States*, 256 F.3d 1365 (Fed.Cir.2001); *Statesman Sav.* *Holding Corp. v. United States* 41 Fed.Cl. 1 (1998); *Hansen Bancorp, Inc. v. United States*, 49 Fed.Cl. 168, 177, n. 12 (2001).

in this case, FSLIC, and all of its assets and liabilities were transferred to its successor, the FSLIC Resolution Fund ("FRF"). 12 U.S.C. § 1821a(a)(1), (a)(2)(A). At the same time, FIRREA provided that, upon the termination of the RTC which previously owned the claims of Security Federal in this case, the FRF would also by operation of law own Security's breach of contract claim against the Government. 12 U.S.C. § 1441a(m)(1)–(2). The FRF is managed by the FDIC in its corporate capacity. 12 U.S.C. § 1811, 1821a(a)(1). Thus, FIRREA required the FDIC to assume conflicting roles in this case by controlling both the interest of the breaching party (FSLIC), and the interest of the breached party (Security Savings). In other words, the FDIC, as manager of the FRF, is in effect on "both sides of the 'v' " in this case.

To compound matters, the FRF also is the largest creditor of the Security receivership because it paid off Security's depositors when Security Federal was liquidated. As of December 21, 2002, the claim of the FRF against the Security receivership was approximately $66.4 million. *FDIC II*, 51 Fed. Cl. at 268. Thus, if a judgment were to be obtained against the Government in this case, the FDIC would distribute the proceeds in accordance with the statutory priority scheme. The priority scheme provides as follows:

**(11) Depositor Preference**

**(A) In general**

Subject to section 1815(e)(2)(C) of this title, amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority:

(i) Administrative expenses of the receiver.

(ii) Any deposit liability of the institution

(iii) Any other general or senior liability of the institution (which is not a liability described in clause (iv) or clause (v)).

(iv) Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).

(v) Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

12 U.S.C. § 1821(d)(11)(A).

Thus, if the FDIC obtained a judgment on its contract claims, first, pursuant to a contract of sale by which the RTC obtained Security's goodwill claims from the Security receivership, the FDIC would first pay the FRF the expenses it incurred in pursuing the goodwill claim, such as attorney's fees and any advances the FRF made to Security, including any interest. Def.'s Response to Order to Show Cause at App. 150–54. *See also* 12 U.S.C. § 1821(d)(11)(A)(i); 12 C.F.R. § 360.3(a)(1). Then, pursuant to the statutory priority scheme, the FDIC would use excess monies to pay the FRF for the deficit it incurred by paying off Security's depositors, including interest. 12 U.S.C. § 1821(d)(11)(iv); 12 C.F.R. § 360.3(a)(6), (7). Then, the FDIC would distribute remaining funds, if any, to other creditors of the Security Federal receivership pursuant to the statutory scheme. If any funds remained, these funds would be distributed to the Security Savings pass-through receivership pursuant to the October 16, 1992 purchase and assumption agreement between the pass-through receivership and the RTC. Def.'s Response to Order to Show Cause at App. 125–26. The pass-through receivership has "subordinated debt" in the amount of $7,040,000 which mostly corresponds to $7 million in ICCs which would have to be satisfied. Pl's Mot. for Partial Summ.J. as to Takings at App.Ex 1, 14. Finally, if any funds remained, the shareholders of Security Savings would be the final creditors paid by the pass-through receivership. 12 U.S.C. § 1821(d)(11)(A)(v).

No other creditor is on a par with the FRF. Consequently, the FDIC would pay itself, as manager of the FRF and as receiver, in the amount of about $75 million. This

amount includes (a) $66.4 million owed to the FRF as of October 31, 2000; (b) $7 million owed by the pass-through receivership to pay ICCs and (c) $1.7 million in expenses. See Def.'s Response to Order to Show Cause at App. 159–167. Barring a district court order to the contrary, the FDIC will use all of the funds to pay its own expenses and claims leaving the Shareholder Plaintiffs with no recovery if any judgment obtained in this case did not exceed the amount that the FDIC intended to pay itself.[2]

Any possibility that a judgment would exceed the amount that the FDIC intended to pay itself was thwarted by this Court's holding that the FDIC could not recover for the receivership deficit of Security Federal. The FDIC could not recover for the receivership deficit for two reasons. The first basis for denying recovery for the receivership deficit was because the FDIC has been vested with conflicting statutory roles in this case: its duty as successor to the receiver of Security Savings, 12 U.S.C. § 1441a(m)(1); as owner of the claims of Security Federal as manager of FRF–RTC, 12 U.S.C. § 1441a(m)(2); and as successor to the obligations of the breaching party FSLIC; and in its role as manager of FRF–FSLIC, 12 U.S.C. § 1821a(a)(1). *FDIC II*, 51 Fed.Cl. at 269–272. These conflicting roles demonstrated that any recovery of the receivership deficit obtained by the FDIC would signify nothing more than a payment from one pocket of the FRF to another pocket of the FRF, thereby presenting this Court with a nonjusticiable *intra*-governmental controversy. The second basis for the Court's holding was that the receivership deficit, representing the loss absorbed by the RTC when it payed off Security Federal's depositors, was never a proper claim of Security Federal. Insofar as the standing of FDIC in this case was predicated upon its status as successor-in-interest and not on its status as Security Federal's deposit insurer, the FDIC was not in the position to claim the receivership deficit. *Id.* at 270.

Because the FDIC was unable to pursue payments for the receivership deficit of Secu-

rity, the dominos then began to fall. The FDIC was deprived of standing to pursue Security's contract claims because it was unable to pursue any theory of damages in which the FRF would pay anyone other than itself. Because the FDIC lacked standing to pursue the contract claims of Security, the Shareholder Plaintiffs claim was extinguished for the lack of any surplus recovery. Thus, so the Shareholder Plaintiffs argue, the statutory priority distribution scheme combined with the conflicting roles of the FDIC in this case deprived them of any contractual remedy to which they may have been entitled. Thus, the Shareholder Plaintiffs argue that their property right to a contractual remedy in this case was taken, and that they are entitled to just compensation under the Fifth Amendment.

The Shareholder Plaintiffs' theory offer two alternative theories describing which apparent property rights of theirs were taken. First, they argue that the property taken was the corporation of Security Savings itself because the corporation constitutes property of the shareholders under Mississippi law. Mississippi's corporate statute defines a "share" as "the unit into which the proprietary interests in a corporation are divided." Miss.Code Ann. § 79–4–1.40(22) (1972). Second, in the alternative, the Shareholder Plaintiffs argue that there has been a taking of the liquidation surplus, the Shareholders' rights in the contract claim of Security Savings.

### III. Standard for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993). The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. After adequate time

---

**2.** The Shareholder Plaintiffs argue that judicial review of the FDIC's acts as receiver might be precluded by 12 U.S.C. § 1821(d)(13)(D). Whether or not this Court even has the jurisdic-

tion to make such a holding, it is unnecessary for the resolution of the parties' takings claims to consider this issue.

for discovery and on motion, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, where that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The court must resolve any doubts about factual issues in favor of the non-moving party, *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed.Cir. 1998), and draw all reasonable inferences in its favor. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed.Cir. 1995).

## IV. Analysis

 It is well established that, generally, governmental inference with a contractual right does not give rise to a taking, but instead entitles a plaintiff to seek compensation for breach of contract. *See Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786 (1978). "Taking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than its sovereign capacity. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights." *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed.Cir.2001) (citations omitted). However, the U.S. Supreme Court has suggested that, in certain circumstances when a plaintiff has been deprived of its right to a contractual remedy by the Government, it can bring a Fifth Amendment taking claim for the deprivation of the contractual remedy. In *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), a claim against the Government was brought by beneficiaries of contracts for war risk insurance by the Federal Government during World War I, in which the Government was an insurer for persons against death or disability sought payments. During the Great Depression, Congress passed the Economy Act of 1933 which repealed "all laws granting or pertaining to yearly renewable term insurance." *Id.* at 575, 54 S.Ct. 840. This provision, in effect, breached the insurance con-

tract for which plaintiffs were in privity of contract. A separate statutory provision withdrew the Government's consent to be sued over the policies. *Id.* at 587, 54 S.Ct. 840. The Supreme Court held that because the Government withdrew its consent to be sued, the beneficiaries might have takings claims against the Government because contracts with the Government are a property right within the meaning of the Fifth Amendment, though ultimately the beneficiaries' claims proceeded on due process grounds. *Id.* at 579, 54 S.Ct. 840. Thus the Takings Clause could be implicated in a situation when the Government "repudiates debts to save money." *Buse Timber & Sales, Inc. v. United States*, 45 Fed.Cl. 258, 263 (1999).

The possibility that plaintiffs in *Winstar*-related cases might be able to state a claim for the Government's taking of a contractual remedy has been contemplated by a previous decision in this Court. In *Castle v. United States*, 48 Fed.Cl. 187, 217–220 (2000), a *Winstar*-related plaintiff claimed that the passage of FIRREA effected a taking of its ownership interest in a failed thrift as well as its contractual agreement with the Government. The Court ruled that the passage of FIRREA itself, which deprived the plaintiff of certain accounting treatment, gave rise only to contractual based remedies. However, the Court noted that, in certain circumstances "the Takings Clause would be implicated ... if the Government had taken away the range of remedies associated with the vindication of a contract." *Id.* at 219.

 To be sure, the mere fact that no recovery is yielded by a claimant or that a claimant's contractual claim is extinguished is not in of itself a basis for a taking claim. "[T]he lack of a 'complete' contract remedy ... because the contract theory does not yield a recovery, [does] not give life to a takings theory." *Home Sav. of America, F.S.B. v. United States*, 51 Fed.Cl. 487, 496 (2002). Nevertheless, there is a distinct possibility that the much-noted conflict of interest vested by Congress in the FDIC—as creditor, deposit insurer, breaching party, and holder of the claims of the breached party—could, in certain *Winstar*-related cases involving failed thrifts, result in the

taking of a private plaintiff's range of contractual remedies against the Government. Although this Court may, in the future, be called upon to directly addresses this issue, it is unnecessary to do so in the case at bar because the contingent nature of the Shareholder Plaintiffs' property interest precludes the finding of any taking.

■ The starting point for determining whether a taking has occurred is to analyze the nature of the property interest. *Branch v. United States*, 69 F.3d 1571, 1575 (Fed.Cir. 1995); *M & J Coal v. United States*, 47 F.3d 1148, 1154 (Fed.Cir.1995). The Shareholder Plaintiffs claim that their property interest is the corporation of Security Savings and that Mississippi state law grants them an interest in Security Savings. However, this contention flies in the face of Mississippi state court precedent which holds that "[t]he corporation is a separate entity and the shareholder does not have a legal interest in its property." *Bruno v. Southeastern Servs., Inc.*, 385 So.2d 620, 622 (Miss.1980) *(en banc)*. *See also Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347, 349 (5th Cir.1987) ("Mississippi courts have also recognized that injury to shareholders in the form of a diminution in the value of stock is a loss that is recoverable only by the corporation in a direct action or by the shareholders in a derivative action.") The Mississippi state law of corporations is, in this respect, consonant with this Circuit's precedent which has held, in the context of a contractual claims, that shareholders cannot recover for damages suffered by the corporation. *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed.Cir.1999). *See also Cain v. United States*, No. 95–499C, slip op. at 9–11 (Fed.Cl. July 16, 2002); *FDIC II*, 51 Fed.Cl. at 274–75; 11 *Fletcher Cyclopedia of the Law of Private Corporations* § 5096 at 73 ("[T]he property of a corporation does not belong, in law, to the shareholders, but to the corporation as a distinct legal entity or artificial person."). Instead, the Shareholder Plaintiffs only own shares of the corporation which "are universally considered personal property." *Fayard v. Fayard*, 293 So.2d 421, 423 (Miss.1974). Consequently, the Shareholder Plaintiffs property interest in a takings claim

cannot be its interest in Security Savings as a corporate entity.

■ That leaves the Shareholder Plaintiffs with possession of the property interest that gave them standing to litigate this case, namely their interest "in the surplus of potential recoveries." *FDIC I*, 47 Fed.Cl. at 6 (quoting *Plaintiffs in All Winstar–Related Cases at the Court v. United States*, 44 Fed. Cl. 3, 10 (1999)). However, this interest was zeroed out because this Court ruled that the receivership deficit—an essential element of any theory of damages that could possibly result in a surplus of recoveries—was never a proper portion of Security's damages. *FDIC II*, 51 Fed.Cl. at 270. Even if the FDIC were not saddled with the conflicting roles imposed on it by Congress as described above, it still could never have recovered for the receivership deficit. Without the receivership deficit, the maximum amount of expectancy damages that could be recovered would be $64 million. *Id.* at 272. Because shareholders of a failed thrift under the long-standing statutory priority scheme are always the last of all claimants to be paid, it would be impossible for the Shareholder Plaintiffs to obtain any surplus recoveries in the face of over $75 million in superior claims against the Security receivership. Thus, in this specific instance, while the remedy did not produce any recovery for the Shareholder Plaintiffs, they were never deprived of their property interest in a contractual remedy. As a result, Defendant did not take any property interest of the Shareholder Plaintiffs.

## V. Conclusion

Defendant's cross-motion for summary judgment as to takings claims is GRANTED. Shareholder Plaintiffs' motion for partial summary judgment as to its taking claim is DENIED. The Clerk of the Court is directed to enter judgment in favor of the Defendant in Case Nos. 92–577C and 92–817C and to dismiss the complaints of all Plaintiffs. No costs.