341 F.3d 1342
 H.C. BAILEY, Jr., Bailey Mortgage Company, Carol A. Bailey, Glynn Hughes, Harperville Irrevocable Trust, Joan B. Bailey, John T. Cossar, Kenneth W. Warren, Lewis S. Tilghman, Madison Hills Farms, Inc., Malco Irrevocable Trust, and W.C. Bailey, Plaintiffs-Appellants, and
Federal Deposit Insurance Corporation, Plaintiff-Appellant,
v.
UNITED STATES, Defendant-Appellee.
 No. 02-5170.
 No. 03-5005.
 United States Court of Appeals, Federal Circuit.
 August 27, 2003.
 
 Appeal from the United States Court of Federal Claims, Edwards J. Damich, Chief Judge. COPYRIGHT MATERIAL OMITTED Alan W. Perry, Forman Perry Watkins Krutz & Tardy, PLLC, of Jackson, MS, argued for plaintiffs-appellants. Of counsel on the brief were Mary C. Gill and Craig H. Kuglar, Alston & Bird, LLP, of Atlanta, GA; and Laurence H. Tribe, Ralph S. Tyler Professor of Constitutional Law, Harvard University Law School, of Cambridge, MA.
 John V. Thomas, FDIC Legal Divison, Federal Deposit Insurance Corporation, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Richard M. Schwartz, John M. Dorsey, III, and Richard S. Gill.
 David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Deputy Assistant Attorney General; Jeanne E. Davidson, Deputy Director; Daniel D. McClain, and William F. Ryan, Trial Attorneys.
 Before MAYER, Chief Judge, MICHEL and PROST, Circuit Judges.
 MAYER, Chief Judge.
 
 
 1
 H.C. Bailey, Jr., et al. (collectively "Bailey") and the Federal Deposit Insurance Corporation ("FDIC") appeal the judgment of the United States Court of Federal Claims dismissing their contract damages and Fifth Amendment takings claims. Fed. Deposit Ins. Corp. v. United States, 51 Fed. Cl. 265 (2001); Fed. Deposit Ins. Corp. v. United States, 53 Fed. Cl. 31 (2002); Bailey v. United States, 53 Fed. Cl. 251 (2002). Because the court correctly determined that neither party's claims allege an Article III case or controversy or Fifth Amendment taking, we affirm.
 
 Background
 
 2
 This is a Winstar-related case. In 1984, Security Savings and Loan Association ("Security Savings") acquired a failing thrift, New North Mississippi Federal Savings and Loan Association. See Fed. Deposit Ins. Corp. v. United States, 47 Fed. Cl. 2, 5 (2000). Bailey is a shareholder of Security Savings. In 1985, Bailey Mortgage Company, a subsidiary of Security Savings, acquired another failing thrift, Security Trust Federal Savings and Loan Association of Oak Ridge, Tennessee. In both transactions, the Federal Savings and Loan Insurance Corporation ("FSLIC") provided regulatory forbearances in assistance agreements whereby, inter alia, supervisory goodwill, cash contributions, and income capital certificates could be counted toward regulatory capital requirements.
 
 
 3
 After the passage of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183 (1989), and its implementing regulations, Security Savings could not meet its regulatory capital requirements and was seized by the Office of Thrift Supervision in 1992. The assets of Security Savings were passed to a new institution, Security Federal Savings and Loan Association ("Security Federal"); and the Resolution Trust Corporation ("RTC") became its receiver. See 12 U.S.C. § 1441a(b)(4)(A) (2000). In April of 1994, the RTC liquidated Security Federal and provided approximately $84.3 million in additional funds to cover deposit liabilities. This subrogated claim, the rights of which were now owned by the RTC, stood at $42.6 million in 1998 and $66.4 million as of October of 2001. The RTC was terminated in 1995 and its assets, including the subrogated claim, were transferred to the FSLIC Resolution Fund ("FRF"), id. § 1441a(m)(1)-(2), managed by the FDIC, id. § 1811(a)-(b). The FDIC also became the receiver of Security Savings' deficit, the "receivership deficit." Id. This deficit, which includes the subrogated claim owned by the FRF and other expenses including FDIC operating expenses, and taxes, totaled $68.2 million as of December of 1998, and with interest was $71.1 million as of December of 2000.
 
 
 4
 The FDIC and Bailey filed suit in the Court of Federal Claims against the United States for breach of the assistance agreements with the FSLIC by the enactment of FIRREA. In May of 2000, the court ruled that the government had breached its contracts with Security Savings, and that Bailey had a direct interest in any surplus recovery by the FDIC. Fed. Deposit Ins. Corp., 47 Fed. Cl. at 4. The FDIC and Bailey submitted summary judgment motions with respect to damages under breach of contract and Fifth Amendment takings theories. The court dismissed the FDIC's and Bailey's contract damages claims for lack of Article III standing and declined to bifurcate the FDIC's and Bailey's contract claims, Fed. Deposit Ins. Corp., 51 Fed. Cl. at 273, 276; dismissed the FDIC's Fifth Amendment takings claim for lack of Article III standing, Fed. Deposit Ins. Corp., 53 Fed. Cl. at 32; and dismissed Bailey's takings claim because Bailey had not been deprived of a contractual remedy. Bailey, 53 Fed. Cl. at 257. Bailey and the FDIC appeal and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
 
 
 Discussion
 
 
 5
 We review a grant of summary judgment by the Court of Federal Claims de novo. Hercules Inc. v. United States, 292 F.3d 1378, 1380 (Fed.Cir.2002). We will affirm such a grant "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Barseback Kraft AB v. United States, 121 F.3d 1475, 1479 (Fed. Cir.1997).
 
 I.
 
 6
 The FDIC and Bailey argue that they may recover expectancy damages of $208.6 million. This figure represents the receivership deficit of $68.2 million and the estimated value of Security's assets in the absence of the breach of the assistance agreements of $140.4 million in 1998, under a "debanking" theory. They assert that the court made two legal errors in its damages calculation.
 
 
 7
 First, they argue that the court erred by excluding the receivership deficit from the potential damages award. They contend that this liability is unfairly double-counted: counted once because it may not be recovered from the government, and counted a second time because it must be repaid. This theory fails, however, because it is premised on the false assumption that the receivership deficit is an asset available for recovery by the FDIC for Security Savings. The claim for the recovery of the receivership deficit is predominantly held by the FRF because the largest portion of it is that which was absorbed by the RTC when it paid Security Federal's deposit liabilities. See Landmark Land Co. v. Fed. Deposit Ins. Corp., 256 F.3d 1365, 1380 (Fed.Cir.2001) ("[T]he government holds a claim against [the thrift] for an ... amount paid by the RTC to [the thrift's] depositors...."); id. at 1381 ("It is undisputed that [the failed thrift] owes the FRF over $1.5 billion for the advances that the FRF made to [the thrift's] depositors upon its liquidation.").
 
 
 8
 The FDIC and Bailey then argue that the court erred by rejecting Bailey's hypothetical "debanking" damages of approximately $140 million positive equity in 1998 and limiting it to $64 million as of 1994. The FDIC and Bailey explain that the non-breach provisions of FIRREA would have prevented Security Savings from continuing to engage in the thrift business while maintaining direct investments in real estate. They posit that Security Savings would have, inter alia, exited the thrift business and sold its retail banking deposits and branch offices in 1994, and established a holding company for direct investments in real estate and financial institutions. They assert that the present value of the hypothetical assets, $140 million at the estimated time of trial, is recoverable. The court reasoned that such a hypothetical holding company would not have retained the benefits of the assistance agreements after selling the thrifts, and that therefore the government's contract liability to Security Savings would have ceased in 1994.
 
 
 9
 We decline to ruminate on the fore-seeability of these "debanking" damages, but even if we accepted the theory, we agree with the court that the damages award must be assessed as of the time the bank would have ceded the benefit of the regulatory forbearances. See Cal. Fed. Bank v. United States, 245 F.3d 1342, 1349 (Fed.Cir.2001) ("Profits on the use of the subject of the contract itself, here supervisory goodwill as regulatory capital, are recoverable as damages.") (emphasis added). Consequently, the breach of contract damages must be capped at the alleged 1994 figure of $64 million.
 
 
 10
 Neither Bailey nor any other private creditor could benefit if the FDIC fully recovered its alleged contract damage claims because the maximum potential award of $64 million is exceeded by the FRF's subrogated claim of $66 million. On appeal, Bailey asserts for the first time that he should be compensated $44 million, the value of the thrift in 1989. But this does not help him because it also is exceeded by the $66 million. The expectation damage claim is therefore a nonjusticiable intra-governmental dispute because any damage award recovered from the government by the FDIC would flow to the FRF, from one government coffer to another. Landmark, 256 F.3d at 1382. Thus, the claim lacks adversaries and consequently does not satisfy the Article III, § 2, case or controversy requirement. Id. The FDIC was properly dismissed for lack of standing.
 
 
 11
 Bailey does not contest the FDIC's dismissal, but asserts that he should be able to recover any surplus of expectancy damages directly from the government. This claim, however, must be brought by the FDIC because Bailey in his capacity as a shareholder was not party to the assistance agreements. See Glass v. United States, 258 F.3d 1349, 1355 (Fed.Cir.2001) ("[B]ecause the shareholders did not stand to directly benefit under the contract, they are at most incidental beneficiaries of the contract with no rights to enforce the contract against the United States."). By its contingent nature, Bailey's contract claim fails with the FDIC's. See First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1288 (Fed.Cir.1999) (Shareholders possess "contingent interest in a liquidation surplus.").
 
 II.
 
 12
 The FDIC argues that Security Savings as a viable entity was taken on August 9, 1989 with the passage of FIRREA. It theorizes that it may recover $64.5 million: the value of the thrift at the time, $14.8 million in equity and its receivership deficit of approximately $49 million. The FDIC contends that with interest the total exceeds $74 million. Under the analysis above, however, the receivership deficit may not be included in any recovery by the FDIC for Security Savings. And the remaining $14.8 million is exceeded by the amount owed to the FRF. Thus, the takings claim is also an intra-governmental claim, and was properly dismissed for lack of Article III standing.
 
 
 13
 Bailey argues that the court erred by rejecting his Fifth Amendment per se and regulatory takings theories. He argues that the government effected a per se taking of the thrift by enacting FIRREA and by seizing it in 1992. But "[i]t is well established that it is not a taking for the government to close an insolvent bank and appoint a receiver." Branch v. United States, 69 F.3d 1571, 1575 (Fed.Cir.1995). We look to the cause of the insolvency, see id., to determine whether the change in accounting treatment for goodwill constituted a per se taking, and conclude that it did not. We have already rejected the theory that regulatory assessments of liability fall into the category of per se takings. Id. at 1575 (rejecting the assertion that the seizure of a sister bank of a failed thrift under a cross-guarantee provision of FIRREA constituted a per se taking). And the same analysis appertains here. See id. at 1576 ("[T]he principles of takings law that apply to real property do not apply in the same manner to statutes imposing monetary liability.").
 
 
 14
 Alternatively, Bailey argues that the government effected a regulatory taking of his thrift by enacting FIRREA and breaching the assistance agreements. It was not the thrift, or its stock, that was allegedly taken, see First Hartford Corp., 194 F.3d at 1286, but the contractual right to treat goodwill, cash contributions, and income capital certificates as tangible assets. Bailey was not party to the assistance agreements; therefore this theory of an alleged taking of the contract is contingent and must be asserted by the FDIC. See Glass, 258 F.3d at 1355; Castle v. United States, 301 F.3d 1328, 1338-39 (Fed.Cir.2002). Moreover, we have already decided that the seizure of thrifts "for failure to comply with the regulatory requirements imposed by FIRREA" does not constitute a regulatory taking because Bailey, through the FDIC, was not deprived of a contractual remedy for the government's breach to recover the thrift's assets. Castle, 301 F.3d at 1341; id. at 1342 (FIRREA did not take the FSLIC contract with the thrift because it "did not deprive the plaintiffs from a contractual remedy ... plaintiffs retained the full range of remedies associated with any contractual property right they possessed.").
 
 
 15
 Bailey, nevertheless, argues that his inability to recover the receivership deficit in combination with the statutory depositor preference priority scheme takes his contractual remedy to any surplus recovery. Bailey is correct that he has a property interest in any liquidation surplus. See First Hartford Corp., 194 F.3d at 1287-88 (Shareholder possesses a cognizable property interest in eventual liquidation surplus arising under depositor preference statute whereby the receiver is directed to transfer any remaining funds to the depository institution's shareholders.). But under the analysis above, the receivership deficit is not available for derivative recovery by Bailey; and the application of the statutory priority scheme does not take his property interest in the surplus or his right to pursue the remedy. To the contrary, the statute preserves the right of the shareholders to a potential recovery, 12 U.S.C. § 1821(d)(11)(A)(v), and the FDIC has avidly pursued contract damages on behalf of Security Savings. But because the statute directs the receiver to repay receiver expenses, and other obligations subordinated to depositors or general creditors before the shareholders, id. § 1821(d)(11)(A)(i)-(iv), and the receivership deficit exceeds the estimated damages award here, there is no recovery for Bailey simply because there is no liquidation surplus.
 
 
 Conclusion
 
 
 16
 Accordingly, the judgment of the United States Court of Federal Claims is affirmed.
 
 
 17
 
 AFFIRMED.