AMERICAN HERITAGE BANCORP, Plaintiff,

and

Federal Deposit Insurance Corporation, Plaintiff–Intervenor,

v.

The UNITED STATES, Defendant.

No. 90–3982C.

United States Court of Federal Claims.

Sept. 11, 2002.

Daniel J. Goldberg, Washington, DC, for plaintiff.

Richard S. Gill, Washington, DC, for plaintiff-intervenor.

John H. Roberson, U.S. Department of Justice, Washington, DC, with whom were Stuart E. Schiffer, Deputy Assistant Attorney General, and Director David M. Cohen, for defendant.

## OPINION

FIRESTONE, Judge.

Pending before the court is defendant United States' ("government's") motion to dismiss the Federal Deposit Insurance Corporation ("FDIC") from this action on the grounds that the FDIC has not presented a justiciable case or controversy. The government also argues that the FDIC's action is barred by the six-year statute of limitations governing the timeliness of suits filed in this court. For the reasons set forth below, the government's motion to dismiss the FDIC is **DENIED**.

## I. STANDING AND JUSTICIABILITY

### A. The positions of the parties

The FDIC's claims in this case purportedly arose in 1989 with the passage of the Financial Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989) and the enactment of FIRREA's implementing regulations in December 1989. The FDIC filed its complaint-in-intervention in this case on March 26, 1997. On March 4, 2002, in accordance with the court's February 4, 2002 Order, the United States moved to dismiss the FDIC's claims.

The government contends that the FDIC lacks standing to intervene in this matter based upon the United States Court of Appeals for the Federal Circuit's ("Federal Circuit's") opinions in *Landmark Land Co. v. United States*, 256 F.3d 1365 (Fed.Cir.2001) and *Glass v. United States*, 258 F.3d 1349 (Fed.Cir.2001), *amended on reh'g*, 273 F.3d 1072 (Fed.Cir.2001). In *Landmark* and *Glass*, the Federal Circuit held that the FDIC does not have standing where its interests are not adverse to the United States' interests. Specifically, the Federal Circuit held that the FDIC's interests are not adverse where the government would be entitled to all of the damages claimed by the FDIC in the action. Thus, the Circuit held that unless the maximum damage award sought by the FDIC is "in excess of what the failed thrift owes to the government, the case-or-controversy requirement is not satisfied." *Landmark* at 1382. *See Glass*, 258 F.3d at 1355. The Federal Circuit reasoned that if the recovery sought does not exceed the amount the FDIC must reimburse to the government, the recovery would "essentially flow from one Government fund to another." *Glass* at 1355.

The government argues that the FDIC does not have standing in this case because the FDIC's claims are not in excess of what the failed thrift owes to the government. The FDIC's highest damage claim is for $9,946,572. The FDIC paid over $241 million to insured depositors (including interest); thus the subrogated claim exceeds the amount sought by the FDIC in this action. Accordingly, the government contends that

the FDIC has not presented a justiciable case or controversy, and its claims must be dismissed.

The FDIC argues in response that it has standing because the facts of this case make it distinguishable from *Glass* and *Landmark*. In particular, the FDIC argues that under the statutory priority scheme applicable to this case, uninsured depositors and third party creditors (who together have claims totaling approximately $184,000) are entitled to share with the government, on a pro-rata basis, in any recovery by the FDIC. The FDIC explains that because there were no such creditors in *Glass* or *Landmark*, the Federal Circuit had correctly concluded in those cases that the government would be entitled to the full recovery. However, in this case, the FDIC argues that the non-insured depositors and general creditors are entitled to a pro-rata recovery, and thus the FDIC has standing to assert claims on their behalf. The FDIC contends that where there are other creditors entitled to share in the FDIC's recovery under the priority scheme, the FDIC has standing, even if the damage claim is not sufficient to fully satisfy the total amount owed back to the government for having paid the insured depositors.

In support of its position, the FDIC points to the Federal Circuit's *amended* opinion in *Glass*, in which the Federal Circuit stated that, "While any net recovery by the FDIC would be distributed to creditors under the statutory scheme applicable to the Security receivership, *in this case* FRF–RTC has priority over all other creditors under this statutory scheme." *Glass*, 273 F.3d at 1072 (emphasis added). The FDIC argues that this amended language demonstrates the Federal Circuit's recognition that if other creditors are entitled to share in the FDIC's recovery on a pro-rata basis with the government, the FDIC has standing.

The government argues that the FDIC's standing argument is unfounded. According to the government, uninsured depositors and creditors do not have an equal priority with the government under the statutory priority scheme. The government claims that the relevant priority statute gives the government's subrogated claim a "super-priority" ahead of the uninsured depositors and other creditors. For the reasons that follow the court finds that the FDIC has the better reading of the law.

**B. The relevant priority statute does not give subrogated claims a "super-priority"**

■ The government's statutory argument hinges on the plain language of 12 U.S.C. § 1821(d)(11) (1988 ed., Supp. III (1991)) ("Section (d)(11)"), which states as follows:

(11) Distribution of assets

(A) Subrogated claims; claims of uninsured depositors and other creditors

The receiver shall—

(i) retain for the account of the Corporation *such portion* of the amounts realized from any liquidation as the Corporation *may be entitled to receive* in connection with the subrogation of the claims of depositors; and

(ii) pay to depositors and other creditors the *net amounts available* for distribution to them.

(B) Distribution to shareholders of amounts remaining after payment of all other claims and expenses

In any case in which funds remain after all depositors, creditors, other claimants, and administrative expenses are paid, the receiver shall distribute such funds to the depository institution's shareholders or members together with the accounting report required under paragraph (15)(B).

(Emphasis added).

The government contends that Congress established a "super-priority" in Section (d)(11) when it provided that uninsured depositors and creditors would only receive the "net amounts available" to them. According to the government, because Congress provided that the receiver may retain for the FDIC the "amounts ... the Corporation [FDIC] may be entitled to receive in connection with the subrogation of the claims of depositors," i.e. the amounts paid by the FDIC, before paying other depositors and general creditors the "net amounts available ... to them," Congress established a priority for the FDIC

to the extent that it paid the insured depositors.[1] The court disagrees.

Contrary to the government's contention, the court does not find that Congress' use of the word "net" in Section (d)(11) unambiguously established a "super-priority" for the FDIC's subrogated claims. When Section (d)(11) is reviewed in context, it is not at all certain that the word "net" necessarily provided that the FDIC's subrogated depositor claims would be paid *in full* before uninsured depositors or general creditors shared in the liquidation proceeds. Indeed, when the section is read in its entirety it appears that "all depositors [both insured and uninsured depositors] and creditors," were to share in the distribution of assets on some fair basis. Under Section (d)(11) the receiver is allowed to retain for the *Corporation* [FDIC] the "*portion* ... [it] ... *may be entitled to receive*" for the subrogated claims. Use of the phrase, "portion ... [the FDIC] ... may be entitled to receive," in juxtaposition with the phrase "the net amounts available" to them, suggests that under Section (d)(11), Congress expected that the FDIC, together with uninsured depositors and general creditors, would share in the "portion" of the whole available for their group, on a pro-rata basis. While Congress in Section (d)(11) may well have contemplated that the FDIC would receive the lion-share of the proceeds based on the amounts it paid out to insured depositors, Section (d)(11) does not state the FDIC is to be paid *in full* before all other depositors or creditors are entitled to payment. Without a clear directive from Congress for payment in full to the FDIC, the court cannot read a "super-priority" for the FDIC into the statute. Indeed, the provision contemplates in Section (d)(11)(B) that "all depositors, creditors, other claimants and administrative expenses" will share in the distribution of assets. Section (d)(11)(B) provides that only persons not entitled to a "portion" of the distribution of assets, are "shareholders" who

Congress provided would only be paid after "all others."

In view of the foregoing, the court finds that Section (d)(11) did not plainly establish a "super-priority" for the FDIC. Thus the court may properly look to agency interpretation of the statute to determine its meaning. It is well-settled that where there is an ambiguity in the language of a statute, the interpretation of the agency charged by law with its implementation is given deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As the United States Supreme Court recently stated in *Barnhart v. Walton*, 535 U.S. 212, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002), "This Court has previously said that, if the statute speaks clearly 'to the precise question at issue,' we 'must give effect to the unambiguously expressed intent of Congress.' If, however, the statute 'is silent or ambiguous with respect to the specific issue,' we must sustain the Agency's interpretation if it is 'based on a permissible construction' of the Act." *Barnhart* at 1269 (citations omitted). Because the court finds that the language of Section (d)(11) is ambiguous, it will now look to the FDIC's construction of the statute to determine if it is permissible, and if so, the court will give FDIC's long-standing regulatory interpretation deference.

## C. The FDIC's regulatory priority scheme is entitled to deference

For over 30 years, the FDIC has provided by regulation that all depositors (both insured and uninsured) and general creditors would share in the distribution of any receivership assets on a *pro-rata* basis according to the value of their claims. As 12 C.F.R. § 360.3 [2] states:

Priorities

(a) Unsecured claims against an association or the receiver that are proved to the

---

1. The government argues that this priority was established in a 1933 Banking Act, which clarified that the FDIC's subrogated claim extended only to the amounts paid to depositors and that depositors retained a claim for any remaining uninsured amounts. *See* Tr. 9:22.

2. What is now Section 360.3 was originally promulgated in 1968 under a different citation. After several redesignations over the years, which did not change the content of the regulation, Section 360.3 took its current form in 1993.

satisfaction of the receiver shall have priority in the following order:

(1) Administrative expenses of the receiver, including the costs, expenses, and debts of the receiver;

(2) Administrative expenses of the association . . . ;

(3) Claims for wages and salaries, including vacation and sick leave pay and contributions to employee benefit plans, earned prior to the appointment of the receiver by an employee of the association whom the receiver determines it is in the best interests of the receivership to engage or retain for a reasonable period of time;

(4) If authorized by the receiver, claims for wages and salaries, including vacation and sick leave pay and contributions to employee benefits plans, earned prior to the appointment of the receiver, up to a maximum of three thousand dollars ($3,000) per person, by an employee of the association not engaged or retained pursuant to a determination by the receiver pursuant to the third category above;

(5) Claims of governmental units for unpaid taxes, other than Federal income taxes, except to the extent subordinated pursuant to applicable law; but no other claim of a governmental unit shall have a priority higher than that of a general creditor under paragraph (a)(6) of this section;

(6) Claims for withdrawable accounts, including those of the Corporation as subrogee or transferee, and all other claims which have accrued and become unconditionally fixed on or before the date of default, whether liquidated or unliquidated . . . ;

(7) Claims other than those that have accrued and become unconditionally fixed on or before the date of default, . . . ;

(8) Claims of the United States for unpaid Federal income taxes;

(9) Claims that have been subordinated in whole or in part to general creditor claims, which shall be given the priority specified in the written instruments that evidence such claims; and

(10) Claims by holders of nonwithdrawable accounts, including stock, which shall have priority within this paragraph (a)(10) in accordance with the terms of the written instruments that evidence such claims.

The court finds that this regulatory priority scheme is permissible under Section (d)(11) and gives meaning to Section (d)(11)(A). The FDIC permissibly placed all depositors and creditors in a category that allowed them to share on a pro-rata basis in the proceeds collected by the receiver. Indeed, apparently all of the distributions made in receiver cases have been made in accordance with this regulation, without objection by the government. Thus, the court finds that the FDIC regulation is permissible under the Act and is therefore entitled to deference.

## D. The 1993 Amendments to Section (d)(11)

The court further finds that the 1993 Amendments to Section (d)(11) and its legislative history confirm the court's conclusion that it must give deference to the FDIC's regulatory priority scheme and reject the government's view that Section (d)(11) established a "super-priority" for the Corporation with respect to "subrogated claims." The amended statute and the legislative history make plain that Congress understood that payments were being made pursuant to the FDIC's long-standing pro-rata distribution scheme and that in order to change that scheme, Congress needed to amend the law. The 1993 Amendments demonstrate that not until Congress amended Section (d)(11) in 1993, subrogated claims did not have a "super-priority." Indeed, the 1993 Amendments give a "super-priority" to all depositors, not simply subrogated claims based on payments to insured depositors.

The relevant language of the 1993 Section (d)(11) amendments provides as follows:

(11) DEPOSITOR PREFERENCE.—

(A) IN GENERAL.—Subject to section 5(e)(2)(C), amounts realized from the liquidation or other resolution of any insured depository institution by any other receiver appointed for such institution shall be distributed to pay claims (other than secured claims to

the extent of any such security) in the following order of priority:

(i) Administrative expenses of the receiver.

(ii) Any deposit liability of the institution.

(iii) Any other general or senior liability of the institution (which is not a liability described in clause (iv) or (v)).

(iv) Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).

(v) Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

Pub.L. No. 103–66, § 3001, 107 Stat. 312, 336 (Aug. 10, 1993). The Conference Report on this new legislation explains Congress' intent in amending the statute: "This provision amends the Federal Deposit Insurance Act *to give depositors a preference over general and subordinated creditors and shareholders when a receiver distributes assets from failed banks and thrifts.*" H.R.Conf.Rep. No. 103–213 at 436 (1993), U.S.Code Cong. & Admin.News 1993, pp. 1088, 1125 (emphasis added). In addition, the report makes plain that Congress understood that *under the existing priority scheme,* "*the FDIC pays depositors on a pro rata basis with general creditors* when distributing the assets of a failed national bank or of a state bank or thrift in a state that does not have a depositor preference law." *Id.* (Emphasis added).

The government's contention that the 1993 amendment to Section (d)(11) is not relevant to the court's analysis of the pending controversy is without merit. It is well-settled that

when Congress enacts an amendment, the court may presume that Congress "intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights." 1A Norman J. Singer, *Statutes and Statutory Construction* § 22:30 (6th ed.2002). *See May Department Stores Co. v. Walton,* 572 F.2d 1275, 1278 (8th Cir.1978) ("[A] subsequent amendment and its legislative history, although not controlling, is nonetheless entitled to substantial weight in construing the earlier law."); *see also Stone v. Immigration and Naturalization Serv.,* 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."). Thus, it is clear that prior to the 1993 amendment, which gave depositors a "preference over general and subordinated creditors and shareholders," there was no "super-priority" for subrogated claims based on insured deposits, as the government asserts.

■ In view of the foregoing, the government's contention that the FDIC's subrogated claim always enjoyed a "super-priority" is not supported. The original Section (d)(11) clearly did not establish a "super-priority" for the claim of the FDIC based on payments to insured depositors. Rather, Section (d)(11) provided that any money recouped by the receiver on behalf of the failed bank should be shared on a pro-rata basis with the FDIC and uninsured depositors and creditors in accordance with the FDIC's regulation.[3] In such circumstances, this case is distinguishable from *Glass* and *Landmark,* in that a portion of the FDIC's interests are adverse to the United States' interests.[4] Ac-

---

3. The government's contention that the receiver no longer has any claims for anyone other than the FDIC government arm is mistaken. The government argues that under the 1990 Contract of Sale between the RTC receiver and RTC corporate (the government), the receiver relinquished all of its claims on behalf of other creditors. This is not true. The Contract of Sale between the RTC, as receiver of Home Federal, and RTC corporate (the government arm) did not extinguish the receiver's claim, but allowed RTC corporate to assert it on the receiver's behalf. Indeed, the FDIC has been distributing assets

from the Home Federal Receivership since 1990 in accordance with the priority regulation set forth in 12 C.F.R. § 360.3. (Green Aff. ¶ 6, Plaintiff Federal Deposit Insurance Corporation's Opposition to Defendant's Motion to Dismiss the Federal Deposit Insurance Corporation, Ex. A).

4. The court recognizes that several other judges of this court have found *Glass* dispositive. This court, however, respectfully disagrees with their reading of *Glass. Glass* was amended to read, "We grant the FDIC's petition for the limited purpose of amending our earlier opinion as fol-

cordingly, because the FDIC is also representing the interests of the uninsured depositors and general creditors, who are entitled to share on a pro-rata basis with the government in any damage award, the FDIC has standing to maintain a damage claim with respect to that portion.[5]

## II. STATUTE OF LIMITATIONS

■ The government next argues that even if the FDIC has standing, the FDIC should be dismissed from the current litigation, because its action is barred by the six-year statute of limitations governing the timeliness of suits filed in this court. The applicable statute of limitations provides, "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2001). This statute is jurisdictional and may not be waived. *See Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir.1988) ("The 6–year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed."); *see also Admiral Financial Corporation v. United States*, 51 Fed.Cl. 366, 368 (2002). It is not disputed that the FDIC's complaint, filed on March 26, 1997, was filed more than six years after the claim first accrued upon passage of FIR-REA and its implementing regulations. The FDIC argues that its case is nonetheless timely on the grounds that (1) it is the real party in interest with regard to the "goodwill" claims in the original complaint filed by American Home Bank on December 3, 1990, and thus, the FDIC must be substituted with regard to those claims, and (2) it entered into

a valid tolling agreement with the Department of Justice, which tolled the statute of limitations. For the reasons that follow, the court finds that the FDIC is the real part in interest with regard to the goodwill claims set forth in plaintiff AHB's original complaint and thus does not reach the tolling argument.[6]

Rule 17(a) of the United States Court of Federal Claims states:

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Courts have consistently applied this rule "where [a] suit is commenced by one who arguably has an interest in the enforcement of the claim and the real party in interest is later brought into the litigation, the joinder or substitution of the real party in interest relates back for limitations purposes to the date of the original pleading." *Castle v. United States*, 48 Fed.Cl. 187, 194 (2000), *aff'd in part, rev'd in part by* 301 F.3d 1328 (Fed.Cir.2002) (citing *South African Marine*

---

lows: (1) The sentence beginning at page 11, line 5 [258 F.3d at 1355] is amended to read: While any net recovery by the FDIC would be distributed to creditors under the statutory scheme applicable to the Security receivership, *in this case* FRF–RTC has priority over all other creditors under this statutory scheme." *Glass*, 273 F.3d 1072 (2001) (emphasis added). This court, therefore, finds that the Federal Circuit has not yet spoken on the standing of the FDIC with respect to the facts presented in this case.

**5.** Although the court has concluded that the FDIC has standing, the FDIC must now consider whether pursuing a claim would be a wise use of resources. It appears on the record that even if the FDIC were awarded its entire claim, the uninsured depositors and general creditors would see less than $10,000.

**6.** Because the court resolves this issue under Rule 17(a), it also does not reach plaintiff intervenor's Rule 15 argument.

*Corp. v. United States,* 640 F.Supp. 247, 253–54 (Ct. Int'l Trade 1986); *Prevor–Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt., Inc.,* 620 F.2d 1, 3 n. 2 (1st Cir.1980); *Link Aviation, Inc. v. Downs,* 325 F.2d 613, 614–15 (D.C.Cir.1963)).

In order to determine whether the FDIC is a real party in interest, and therefore eligible to relate its claims back to the date of AHB's complaint for limitations reasons, it is necessary to examine each party's claims. In particular, to the extent AHB sought damages that may belong to the failed bank, these claims now belong to the FDIC as receiver. As Judge John Wiese explained in *Castle v. United States,* if "the contract rights brought into issue in the [original] complaint implicate the bank's rights at least to the same extent as those of the shareholder-plaintiffs .... then, the bank had an interest in the subject matter of the suit. Hence, since the FDIC is the bank's successor-in-interest, the FDIC's intervention must be judged to relate back to the date of the original complaint's filing." *Castle,* 48 Fed. Cl. at 195.

An examination of AHB's original complaint and the FDIC's complaint-in-intervention demonstrates that AHB and FDIC plainly have numerous overlapping claims for the same damages for breach of contract and takings arising out of the enactment of FIRREA. The five counts in both complaints are virtually identical. In addition, the complaints contain overlapping prayers for relief.

The AHB original complaint states:

[T]he plaintiff respectfully prays

(a) That the Court declare that the provisions of FIRREA and the OTS capital regulation restricting the inclusion of supervisory good will in capital for purposes of satisfying Home's regulatory capital requirements constitute a repudiation and abrogation of plaintiff's valid contract rights and effect a taking of plaintiff's property without just compensation and a deprivation of plaintiff's property without due process of law, in violation of the Fifth Amendment to the United States Constitution;

(b) That the Court order that the transaction be rescinded and award plaintiff mon-etary relief in the amount of its investment, plus compensation for all monies expended and costs incurred by plaintiff, *and for the value of all benefits conferred on defendant, through plaintiff's purchase, operation and management of Home,* a total sum in excess of $14 million;

(c) That the Court grant plaintiff its costs, interest, and attorney's fees as allowed by law; and

(d) That the Court grant such other and further relief as the law and evidence may justify and as the Court may deem just and proper.

(Emphasis added). The FDIC's complaint-in-intervention states:

Plaintiff Intervenor respectfully prays:

(a) That the Court declare that the provisions of FIRREA and the OTS capital regulation restricting the inclusion of supervisory goodwill and other regulatory and accounting forbearances for purposes of satisfying New Home Saving's regulatory capital requirements constitute a repudiation, breach and abrogation of Plaintiff Intervenor's valid contract rights, effect a taking of Plaintiff Intervenor's property without just compensation and a deprivation of Plaintiff Intervenor's property without due process of law, in violation of the Fifth Amendment to the United States Constitution and that Plaintiff Intervenor be awarded damages in an amount to be established at trial, including without limitation, the loss of going concern values and any consequential damages resulting from the closure of New Home Savings;

(b) That the Court order Plaintiff Intervenor be granted monetary relief in an amount sufficient to compensate it for all monies expended and costs incurred by Plaintiff Intervenor, *and for the value of all benefits conferred on Defendant, through Plaintiff Intervenor's purchase, operation and management of the failed institution,* in an amount consistent with the evidence presented at trial;

(c) That the Court grant Plaintiff Intervenor its costs, interest, and attorney's fees as allowed by law; and

(d) That the Court grant such other, further, and different relief as the law and evidence may justify and as the Court may deem just and proper.

Although AHB asserts that it too has standing to maintain its own breach of contract claims, it cannot dispute that the complaints are virtually identical in several respects and that certain of AHB's claims are so broadly crafted as to encompass claims that belong to the failed institution, and therefore its receiver, the FDIC. Following the reasoning in *Castle*, and cases cited within, this court finds that the FDIC's claims, asserted as a real party in interest, are judged to relate back to the date of the original complaint.[7] FDIC's complaint is, therefore, deemed timely filed.

## III. CONCLUSION

For the above-stated reasons, the defendant's motion to dismiss the FDIC, filed March 4, 2002 is **DENIED**. Each party to bear its own costs.

---

7. Final resolution of the ownership and viability of AHB's and FDIC's claims will await the briefing of the government's special plea in fraud counterclaim.