Joanne KNIGHT, John A. Malone, James Parker, Luron L. Bailey, Barbara Green, Parthenia Covington, James S. Walters, Makiea Johnson, Jacqueline W. Wilmer, Edith Mitchell, Delores Poplar, Robert Hill, Willa Webb, and Serena Waymon, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 02–5124.

United States Court of Appeals, Federal Circuit.

May 1, 2003.

Before MAYER, Chief Judge, MICHEL, and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

Plaintiffs-appellants Joanne Knight et al., appeal the order of the United States Court of Federal Claims dismissing their contract claims pursuant to Rule 12(b)(1) of the Court of Federal Claims for lack of subject matter jurisdiction. *Knight v. United States,* 52 Fed. Cl. 243 (Fed.Cl. 2002). We conclude that the trial court did not err in finding jurisdictional facts without trial or summary judgment proceedings, but did err in holding that appellants, other than Willa Webb, were not third-party beneficiaries to the contract. We therefore hold that the Court of Federal Claims did have Tucker Act jurisdiction over the complaint—with the exception of plaintiff Webb. Thus, we *affirm-in-part, reverse-in-part* and *remand.*

## BACKGROUND

Appellants were all employees of the Little Neighborhood Center, Inc. ("LNC") in Philadelphia, Pennsylvania. For over thirty years LNC was a service provider for the government's Head Start program. Under the Head Start program, LNC received a grant from the Department of Health and Human Services ("DHHS") and its Administration for Children and Families ("ACF") and under that grant provided educational, nutritional, and social services to preschool children of low-income families in the Philadephia area.

Beginning in late 1997, DHHS developed various concerns regarding LNC's provision of services under the Head Start program. At a meeting on March 23, 1998, DHHS representatives asked LNC to voluntarily relinquish its grant. Two days later, on March 25, 1998, David J. Lett, Regional Administrator for DHHS,

sent a letter to Reverend Patrick C. Elmore, President of the Board of Directors for LNC. In that letter, Mr. Lett stated, among other things, "[i]f LNC agrees to relinquish the program, services for children and employment for staff will continue without interruption." In addition, Mr. Lett stated that if LNC did not voluntarily relinquish its Head Start grant, DHHS would deny refunding of LNC's grant at its next opportunity. After further attempts by LNC to save its Head Start grant—including its submission of a plan to cure deficiencies identified by DHHS—Mr. Lett sent another letter to Dr. Elmore on April 17, 1998. In that letter, Mr. Lett informed Dr. Elmore that LNC's efforts to save its grant were insufficient and he reiterated his commitment to maintain "service to children and families and continuity of employment for LNC staff." On or about May 22, 1998, Mr. Lett met with the LNC Board of Directors and others (including a majority of the plaintiffs). At that meeting Mr. Lett repeated his statement that LNC staff would be rehired.

All of the discussions and meetings culminated in a written agreement dated June 16, 1998, and signed by representatives of LNC and ACF. In that agreement, LNC voluntarily relinquished its grant for the Head Start program, effective May 31, 1998. Among other concessions, in paragraph six of the agreement ACF warranted that the new, interim Head Start grantee in Philadelphia "agrees to offer employment to qualified LNC staff, excluding the Executive Director and administrative management personnel, through mid-June 1999." This agreement contained an integration clause stating the agreement "represents the entire agreement between the LNC and ACF and any and all prior understandings or agreements between the parties that pertain to the subject matter of this Agreement are fully superseded hereby."

In addition, the agreement contained a nondisclosure clause providing that "the terms and conditions of this Agreement shall remain confidential as between the parties and that they shall not disclose them to any person or entity."

This case arose when the interim Head Start grantee hired some, but not all of LNC's employees. The plaintiffs—those who were not hired—initially filed suit in the United States District Court for the Eastern District of Pennsylvania in July of 1999. The suit was transferred to the United States Court of Federal Claims by the parties' stipulation and plaintiffs filed a complaint in that court on April 7, 2000. In that complaint, plaintiffs alleged a contract with the government based on Mr. Lett's letters of March 25 and April 18, the oral communications at the May 22 meeting, and the contract dated June 16. Plaintiffs also alleged that they detrimentally relied on ACF's representations and in consideration of the offer of continued employment, plaintiffs did not seek to prevent or contest LNC's decision to relinquish the grant.

On June 13, 2000, the government filed a motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted pursuant to Court of Federal Claims Rules 12(b)(1) and 12(b)(4) respectively. The trial court granted the Rule 12(b)(1) motion and dismissed the claim for lack of jurisdiction because the plaintiffs had not shown they had a contract with the government or that they were third-party beneficiaries to any contract between LNC and the government.

In this appeal, we consider whether the trial court erred by "weighing the evidence" and finding facts upon its consideration of the government's motion to dismiss and whether the trial court properly determined that the plaintiffs were not

third-party beneficiaries to the June 16, 1998 agreement between LNC and ACF.

## DISCUSSION

### I.

Whether the Court of Federal Claims properly dismissed a complaint for want of subject matter jurisdiction is a question of law. Plaintiffs argue that the trial court improperly "weighed" evidence and found facts at the motion to dismiss stage. Specifically, plaintiffs assert that the trial court was required to accept its factual allegations as to their contract status with the government as true and therefore deny the government's motion to dismiss. We disagree.

Although a court is normally not permitted to weigh evidence and find facts in ruling on a motion to dismiss for lack of subject matter jurisdiction, it is allowed to do so where such a motion "challenges the truth of jurisdictional facts alleged in the complaint." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). This is exactly what happened here, as the government's motion argued that the plaintiffs did not have contractual rights against the government—the only asserted basis in this case for jurisdiction in the trial court. 28 U.S.C. § 1491(a)(1) (2000). In reaching its conclusion to dismiss, the trial court looked at evidence and found facts necessary to determine whether plaintiffs, although not parties to the agreement, had contractual rights against the government. Thus, the trial court properly weighed the evidence and determined correctly that plaintiffs—who did not sign the contract—are not in privity of contract with the government. The plaintiffs thus failed to prove they had a contract with the government.

### II.

The question of whether a plaintiff is a third-party beneficiary to a contract with the United States is a mixed question of law and fact. *Glass v. United States*, 258 F.3d 1349, 1353 (Fed.Cir.2001). Whether the Court of Federal Claims properly dismissed a claim for want of subject matter jurisdiction is a question of law. However, to the extent alleged jurisdictional facts are disputed, the trial court's findings of fact are reviewed for clear error. *Hamlet v. United States*, 873 F.2d 1414, 1415–16 (Fed.Cir.1989). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748.

A claimant who is not a party to a contract can be a third-party beneficiary to that contract where the contract "not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly." *Glass*, 258 F.3d at 1354. Although the claimant bears a heavy burden in showing the parties to the contract intended a "direct" rather than an "incidental" benefit, the claimant does not have to prove that the contract conveyed "a direct right to compensation or the power to enforce that right against the promisor." *Id.* at 1355. Further, to show a direct benefit, a claimant does not have to show the contract identified him or her specifically; it is enough if the claimant falls "within a class clearly intended to be benefited" by the contract. *State of Montana v. United States*, 124 F.3d 1269, 1273 (Fed.Cir.1997).

Plaintiffs claim that they are third-party beneficiaries to the June 16, 1998, agreement between ACF and LNC. The plaintiffs base their argument on the contract provision stating: "ACF warrants that the interim grantee agrees to offer employment to qualified LNC staff, excluding the Executive Director and administrative

management personnel, through June 1999." The trial court, however, concluded that plaintiffs were not third-party beneficiaries because: (1) the contingent nature of the contractual provision (e.g., use of the word "qualified") indicates that the parties did not intend the agreement to entitle plaintiffs to a benefit; (2) the agreement does not reflect the intent of the parties to benefit the plaintiffs directly; rather, the primary purpose of the agreement is to benefit the families who participate in the Head Start program; and (3) the plaintiffs could not have reasonably relied upon the agreement because the contract expressly provided that the parties would not disclose its terms. For the reasons that follow, we disagree with the trial court and hold that plaintiffs have shown they are third-party beneficiaries—at least for purposes of establishing subject matter jurisdiction.

■ First, the trial court erred in determining that plaintiffs could not maintain third-party beneficiary status pursuant to paragraph six of the contract. A broader third-party beneficiary inquiry focuses on whether the contracting parties intended to *directly* benefit the plaintiffs. *Glass*, 258 F.3d at 1354. While "there was no absolute guarantee that any or all of the plaintiffs would be offered employment," *Knight*, 52 Fed. Cl. at 253, the government has not contended that all of the plaintiffs are not "qualified," or that all of the plaintiffs are "administrative management personnel."[1] At most, these terms show an apparent intent to limit the class of eligible LNC staff. This does not indicate, however, that the parties did not intend to confer a benefit on the subset of LNC staff that is "qualified." At this point in the proceedings, the factual allegation that plaintiffs

are "qualified" is at least implicit in their complaint. Therefore, for the purposes of our analysis of the Court of Federal Claims' dismissal of plaintiffs' complaint, we presume that the plaintiffs are "qualified" and within the scope of the provision. To the extent that it is later proven that any plaintiff was not qualified, he or she would of course be outside the scope of the provision and not be a third-party beneficiary.

■ Second, the trial court also erred in determining that the nondisclosure provision of the contract provided a basis to reject third-party beneficiary status. Contrary to the trial court's analysis, our case law does not require that the parties reasonably relied on the promise giving rise to third-party beneficiary status or that the promise must actually be communicated to the third-party beneficiaries. To the extent the court relied on *Montana* for such a proposition, we conclude it erred. *Montana* merely holds that: *"One* way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him." 124 F.3d at 1273 (citing *Restatement (Second) of Contracts* § 302 cmt. d (emphasis added)). Accordingly, then, *Montana* does not *require* reasonable reliance for third-party beneficiary status. Therefore, the nondisclosure provision does not preclude third-party beneficiary status.

Third, the trial court erred in concluding the parties did not intend a direct benefit for the plaintiffs. Although there are statements elsewhere in the contract indicating that its primary purpose is "to promote the best interests of the Head Start children and families in North Philadel-

---

1. The one exception is plaintiff Willa Webb, who as an Executive Director of LNC, is specifically excluded by conditional language in the contract. We therefore affirm the Court of Federal Claims' dismissal as to her only.

phia," that does not mean it is the *only* purpose of every numbered paragraph of the contract. There are several reasons for interpreting paragraph six referring to employment of LNC staff as conveying a direct benefit to the plaintiffs. Indeed, the language of the paragraph indicates no other possible purpose. The contract provision warranting future employment by its own terms applies specifically to "LNC staff" and no one else. A promise of continued employment is a direct benefit. The clause states that the ACF "warrants", i.e., guarantees, that the interim grantee "agrees" to "offer employment" to "qualified LNC staff." This language quite clearly demonstrates a promise or guarantee to LNC that provides what can only be considered a direct benefit to a specified class of persons—certain LNC employees. Also telling is the specificity of the clause—it excludes "administrative management personnel," the "executive director," and those other staff members that are not "qualified." The carve-outs indicate that there was careful deliberation on to whom this benefit should run. Moreover, the employment guarantee ran only through the following spring, to June 1999. Any other reading of the clause renders it meaningless.

In addition to the language of the clause, the context of the negotiations between LNC and ACF and the context of the agreement itself also strongly suggest the parties intended a direct benefit to the LNC employees. The contract contained twenty-three numbered paragraphs, each representing a specific promise or statement of fact. The provision at issue here was a stand-alone, numbered paragraph, suggesting the parties did deliberately incorporate this specific promise into the contract. If paragraph six is without force and effect, it is the only such provision in the contract, for all the others plainly create enforceable rights. Further, the con-

text of the negotiations demonstrates the fate of the LNC employees was, in fact, a central point in all the discussions. In his letter of March 25, 1998, Mr. Lett, in "confirm[ing] discussions" he had with LNC officials on March 23, stated, "[i]f LNC agrees to relinquish the program, services for children and employment for staff will continue without interruption." Similarly, in his letter of April 17, 1998, Mr. Lett stated "[m]y commitment still remains: maintenance of service to children and families and continuity of employment for LNC staff." Finally, at a meeting on May 22, 1998, Mr. Lett orally repeated his pledge of continued employment for LNC staff. Looking back at these various statements, it is clear that in addition to providing continued Head Start services in North Philadelphia for the benefit of the involved children and families, in the June 16, 1998 signed agreement the government was promising continued employment to the LNC staff as an inducement for LNC to relinquish its grant. When read in this context, it is clear that paragraph six in the agreement was intended to directly convey an enforceable contract right to continued employment to the non-supervisory LNC staff. Indeed, it seems likely that inclusion of paragraph six was an essential part of the parties' bargain, in that "but for" its inclusion there would have been no agreement.

### CONCLUSION

We conclude that the trial court did not err in making findings on jurisdictional facts but erred in concluding that all plaintiffs could not maintain third-party beneficiary status pursuant to paragraph six in the June 16, 1998 contract between LNC and ACF. Consequently, we reverse the trial court's grant of the government's motion to dismiss under Rule 12(b)(1) for lack of jurisdiction as to all plaintiffs but Willa

292

Webb, and remand the case for further proceedings.

No costs.