FIRST HARTFORD CORPORATE PEN-SION PLAN & TRUST, on Behalf of It-self, Dollar Dry Dock Bank of New York and all Other Similarly Situated Share-holders of Dollar Dry Dock Bank of New York, Plaintiff

v.

THE UNITED STATES, Defendant.

No. 96–801C.

United States Court of Federal Claims.

Filed Jan. 26, 2001.

Reissued for Publication July 25, 2001.*

ORDER

YOCK, Judge

On November 3, 2000, plaintiff First Hart-ford Corporation Pension Plan & Trust filed Plaintiff's Motion and Memorandum to Join FDIC in Its Capacity as Successor in Inter-est to Dollar Dry Dock Bank of New York in this action, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 19. On November 14, 2000, the Federal Deposit Insurance Corporation ("FDIC") filed the Consent of FDIC to Appear as an Involun-tary Plaintiff, in which the FDIC agreed to be joined and to appear as an involuntary plaintiff in this action. Defendant United States opposed this joinder in Defendant's Response to Plaintiff's Motion to Join FDIC in Its Capacity as Successor in Interest to Dollar Dry Dock Bank of New York, filed with this Court on November 20, 2000. For the reasons set forth below, plaintiff's motion is granted, and the FDIC is joined as a plaintiff pursuant to RCFC 19.

The New York Superintendent of Banks appointed the FDIC as receiver for Dollar Dry Dock Bank of New York ("Dollar Dry Dock") on February 21, 1992. Upon its appointment as receiver, the FDIC as receiv-er assumed "all rights, titles, powers, and privileges" of Dollar Dry Dock, including any claims and causes of action that Dollar Dry Dock had owned. 12 U.S.C. § 1821(d)(2)(A) (1994). This Court previously has found that the FDIC as receiver for Dollar Dry Dock should be joined as a necessary party to this action. *See First Hartford Corp. Pension Plan & Trust v. United States*, 42 Fed.Cl. 599, 613 (1998), *rev'd on other grounds*, 194

---

* This Order was filed unpublished on January 26, 2001. Thereafter, the Plaintiffs Coordinating Committee filed a Request for Publication pursu-ant to Rule 52.1(b). This request has now been allowed, and the Order, with slight modifica-tions, is reissued for publication this date, July 25, 2001.

F.3d 1279 (Fed.Cir.1999) ("Upon his refusal to initiate an action on behalf of the corporation, a shareholder may do so but only after the receiver has been joined as a defendant with the consent of the appointing court.") (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1834). Indeed, it is well settled that the receiver is an indispensable party in a shareholder derivative suit on behalf of a corporation in receivership. *See Porter v. Sabin,* 149 U.S. 473, 478, 13 S.Ct. 1008, 37 L.Ed. 815 (1893) (holding that if the receiver refuses to bring suit on behalf of the corporation, the receiver "should properly be made a defendant in any suit by stockholders in the right of the corporation"); *Schmidt v. Esquire,* 210 F.2d 908, 912–13 (7th Cir.1954); *Coyle v. Skirvin,* 124 F.2d 934, 938 (10th Cir.), *cert. denied,* 316 U.S. 673, 62 S.Ct. 1044, 86 L.Ed. 1748 (1942) ("It is well settled that where a receiver has been appointed for a corporation he is an indispensable party to a stockholder's derivative action"). The defendant does not dispute that FDIC as receiver would have been a necessary party to this action. (*See* Def. Resp. Br. at 1.)

■ Nevertheless, defendant asserts that because the receivership was officially terminated by FDIC on July 1, 2000, there is no longer any basis for joining the FDIC. Further, the defendant again raises the argument that the plaintiff has no standing to maintain a derivative suit before this Court. The defendant's arguments, however, ignore the facts surrounding the termination of the receivership, the law regarding the FDIC's responsibilities as a corporate successor, and the prior holding of the United States Court of Appeals for the Federal Circuit in this case. Accordingly, defendant's arguments must be rejected and the plaintiff's motion granted.

In connection with the termination of the receivership, the FDIC as receiver and the FDIC in its corporate capacity entered into a Corporate Purchase and Assumption Agreement (the "Agreement") on June 12, 2000. As part of the Agreement, the FDIC as receiver transferred to the FDIC in its corporate capacity "any and all actions, causes, claims or judgments" that the receiver "may

have had against the United States or any instrumentality thereof arising from changes in statutory provisions and regulations that altered the ability of the Failed Institution to include intangible assets, such as 'goodwill,' for purposes of satisfying minimum regulatory capital requirements * * *." (Pl. Mot. To Join Ex. 1 at ¶ 2.7.) Further, the FDIC in its corporate capacity expressly assumed from the FDIC as receiver the obligations of the receiver "to distribute any recoveries from such actions, judgments or claims to creditors (including claims by the Federal Deposit Insurance Corporation or its successors in any capacity) and shareholders of the Failed Institution * * *." (*Id.*) In other words, the FDIC in its corporate capacity expressly assumed both the rights *and* obligations of the receivership with regards to Dollar Dry Dock's claims.

Moreover, the Agreement was entered into pursuant to 12 U.S.C. § 1823(d)(1), which specifically authorizes the FDIC as receiver for a failed bank to sell assets from the receivership estate to the FDIC in its corporate capacity. In such a sale, the FDIC in its corporate capacity acquires "all the rights, powers, privileges, and authorities of the Corporation as receiver * * *." 12 U.S.C. § 1823(d)(3)(A). At the same time, FDIC in its corporate capacity "shall continue to be subject to the fiduciary duties and obligations of the Corporation as receiver to claimants against the insured depositary institution in receivership." 12 U.S.C. § 1823(d)(3)(C). Thus, although the receivership has been technically terminated, the rights, powers, privileges, authorities, duties, and obligations of the FDIC as receiver with regard to any actions, causes, claims, or judgements have survived and have been passed along to the FDIC in its corporate capacity. Because the FDIC in its corporate capacity still has the rights and fiduciary responsibilities of the receiver with regards to the claims of Dollar Dry Dock, the FDIC in its corporate capacity remains a necessary party to this action.

The conclusion that the FDIC remains a necessary party to this action although the receivership estate has been terminated is buttressed by prior rulings of this Court in several *Winstar*-related cases. *See Plain-*

*tiffs in All Winstar–Related Cases v. United States,* 44 Fed.Cl. 3 (1999). *See also Castle v. United States,* 48 Fed.Cl. 187 (2000), *reconsideration denied* (Nov. 30, 2000); *Federal Deposit Insurance Corp. v. United States,* 47 Fed.Cl. 2 (2000); *Glass v. United States,* 44 Fed.Cl. 73, 80 (1999). In each of these cases, this Court has upheld the FDIC's standing to act as plaintiff-intervenor in the action, regardless of whether the FDIC was intervening as receiver for the failed institution or in its corporate capacity.

Finally, this Court briefly responds to defendant's argument that plaintiff has no standing to maintain a derivative suit before this Court. The United States Court of Appeals for the Federal Circuit has already held that plaintiff may maintain a derivative suit in this case. *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279 (Fed.Cir.1999), *reh'g en banc denied* (Feb. 18, 2000). The Federal Circuit's decision to permit a derivative suit in this matter hinged on the plaintiff's direct interest in the outcome of the litigation, coupled with a concern over the FDIC's "manifest conflict of interest" in this particular case. The transfer of Dollar Dry Dock's claims from the FDIC as receiver to the FDIC in its corporate capacity has not vitiated the plaintiff's interest in the outcome of the litigation, nor has it eliminated the problem of the FDIC's "manifest conflict of interest" in this particular case.

Accordingly, Plaintiff's Motion and Memorandum to Join FDIC in Its Capacity as Successor in Interest to Dollar Dry Dock Bank of New York is GRANTED, and the FDIC is joined as a plaintiff pursuant to RCFC 19.

IT IS SO ORDERED.