**HANSEN BANCORP, INC., et al., Plaintiffs,**

and

**Federal Deposit Insurance Corp., Plaintiff–Intervenor,**

v.

**The UNITED STATES, Defendant.**

No. 92–828C.

United States Court of Federal Claims.

Feb. 6, 2002.

Richard E. Miller, Philadelphia, PA, for plaintiffs. David L. Braverman, Braverman Kaskey & Caprara, of counsel.

Bruce C. Taylor, Washington, DC, for plaintiff-intervenor. Melissa Satterwhite, Jon A. Stewart, John V. Thomas, Federal Deposit Insurance Corp., of counsel.

William G. Kanellis, Washington, DC, with whom was Assistant Attorney General Robert D. McCullum, Jr. for defendant. Michael M. Duclos, Department of Justice, of counsel.

## *ORDER*

MILLER, Judge.

Not for the first time is a judge on the Court of Federal Claims ruling on the Government's motion to dismiss plaintiff-intervenor the Federal Deposit Insurance Corp. (the "FDIC") from a *Winstar* case. However, the touchstone of *Winstar* cases seems to be the questionable need to duplicate legal rulings in individual cases. Argument is deemed unnecessary.

## FACTS

The facts of this *Winstar* case have been published in previous decisions and will not be repeated here. *See, e.g., Hansen Bancorp. Inc. v. United States,* 49 Fed.Cl. 168, 169–72 (2001). On January 20, 2001, the court entered partial summary judgment in favor of plaintiffs and intervenor FDIC as to the issue of the Government's liability for breach of contract. *Id.* at 177. The court also denied defendant's motion to dismiss the FDIC for lack of standing. *Id.* at 176–77 (discussing *Plaintiffs in All Winstar–Related Cases v. United States,* 44 Fed.Cl. 3 (1999), and *Statesman Sav. Holding Corp. v. United States,* 41 Fed.Cl. 1 (1998)). At plaintiffs' request, on September 18, 2001, the case was stayed pending the resolution of a damages issue to be tried in another *Winstar* case. *See Cal. Fed. Bank, FSB v. United States,* 245 F.3d 1342 (Fed.Cir.2001), *cert. denied* —— U.S. ——, 122 S.Ct. 920, 151 L.Ed.2d 884 (2002). Defendant subsequently filed a motion for reconsideration, presenting a new theory as to why the FDIC lacks standing in this case. In an order dated May 9, 2001, the court denied defendant's motion as to the FDIC, opining that "[p]ursuant to RCFC 54(b), however, if facts are adduced at trial to prove that the FDIC's continued participation in this action is contrary to ... 'controlling authority,' the court will find accordingly." On October 31, 2001, following briefing by the parties on the issue of continuing the stay, the court ordered that the stay expire 10 days following the Federal Circuit's final rulings in *Glass v. United States,* 258 F.3d 1349 (Fed.Cir.2001), and *Landmark Land Co. v. United States,* 256 F.3d 1365 (Fed.Cir.2001). Those rulings have issued. During a status conference held on December 10, 2001, the consensus procedure was for the FDIC to show cause as to why those decisions did not necessitate its dismissal from this case. The FDIC's show-cause brief and the parties' respective responses are now before the court.

## DISCUSSION

The Federal Circuit in *Landmark* held that the FDIC lacked standing because, on the facts of that case, the Government's counterclaim against shareholders represented by the FDIC exceeded the FDIC's claim against the Government. 256 F.3d at 1380. Because the ultimate disposition of the case merely would involve the shifting of funds from one Government fund to another, the FDIC and the Government were not adverse parties, and the FDIC therefore did not satisfy the case or controversy requirement of Article III, Section 2 of the Constitution. *Id.* at 1381–82. The Federal Circuit recognized the "open question" of whether an intervening party must satisfy the case or controversy requirement independently of the named plaintiff, but concluded that because the FDIC's claims in that case were unrelated to those of plaintiff and had been adjudicated without regard to them, it would be improper to permit the FDIC to proceed. *Id.* at 1382. *Glass,* decided on the same date as *Landmark,* adopted the latter's reasoning to reach the same conclusion. 258 F.3d at 1355–56.

The FDIC in this case has asserted four alternative damage theories, with the largest claim amounting to $16,850,228.00. Because this amount is well below the Government's $71 million subrogated counterclaim, the holdings in *Landmark* and *Glass* require a holding that the FDIC lacks standing in this case. The FDIC argues that this conclusion is premature, maintaining that the court cannot apply *Landmark* and *Glass* until the court decides whether the FDIC or plaintiffs own certain disputed claims and the true extent of the FDIC's claim is known.

The FDIC rests on the proposition that the mere fact that plaintiffs and the FDIC dispute claim ownership is enough to pre-

clude dismissal.[1] It asserts that the Federal Circuit ruled that the FDIC in *Landmark* lacked standing only after the court made the factual finding that the FDIC's claims were unrelated to those of plaintiff in that case. To the contrary, *Landmark* not only decided the issue of standing before it turned to the relationship between plaintiff's and the FDIC's claims, but the court expressly found resolution of this issue to be unnecessary. 256 F.3d at 1382.

The FDIC, moreover, fails to explain how, assuming that the FDIC properly owns that portion of plaintiffs' claims it alleges are disputed, a case or controversy would arise. Arguing that certain of plaintiffs' claims are merely derivative of those owned by the thrift, now owned by it, the FDIC nevertheless fails to acknowledge that plaintiffs' claims, while not in final form, do not exceed the Government's counterclaim.[2] Nor does the FDIC argue that plaintiffs' claims likely would be worth more than plaintiffs themselves now are asserting. "Critical to the issue of standing, then, is the fact that adjudication of the FDIC's claim cannot affect any party other than the government." *Landmark*, 256 F.3d at 1381; *see also FDIC v. United States*, 51 Fed.Cl. 265, 276 (2001) (holding FDIC lacks standing even if plaintiff shareholder claims are merely derivative on ground that, even if FDIC adjudicated all claims, amount of surplus recovery would be zero). Although the FDIC correctly notes that resolution of the issue of ownership of claims would affect plaintiffs, a "party other than the Government," the standing doctrine requires that adversity be present between the FDIC and the Government in the circumstances of this case.

Both *Landmark* and *Glass* held that, even if the foregoing did not compel the FDIC's exit, dismissal of the FDIC was justified so long as plaintiffs and the FDIC's claims could be addressed fully without each other. 256 F.3d at 1382; *Glass*, 258 F.3d at 1356. The FDIC's attempt to distinguish this case on the ground that the FDIC in those cases was not adverse to plaintiffs was addressed and rejected in *Admiral Fin. Corp. v. United States*, 51 Fed.Cl. 366, 367–68 (2002). Chief Judge Baskir reasoned that neither *Glass* nor *Landmark* recognizes an exception to the constitutional case or controversy requirement for intervenors whose claims are potentially adverse to those of plaintiffs and that any such dispute as to the ownership of claims would be litigated adequately by the Government. The FDIC has presented nothing that would warrant a different result.

In this case the court already has determined that the FDIC and plaintiffs own colorable, mutually exclusive claims. *Hansen*, 49 Fed.Cl. at 175–76 (finding that both plaintiffs and FDIC owned claims for purposes of standing). Plaintiffs expressly and repeatedly have disavowed any interest in bringing claims other than their own direct claims. Should plaintiffs fail to abide by their disavowal, the court is confident that the Government successfully will parse such additional claims from plaintiffs' total recovery. *See, e.g.*, 28 U.S.C. § 516 (1994) (charging Department of Justice with defending agencies of United States against improper claims). If the FDIC nevertheless believes that the Government will fail in this respect, the FDIC is not precluded from submitting a motion for leave to file an *amicus curiae* brief.

The FDIC further argues that, because plaintiffs merely bring derivative claims, it is a necessary, if not indispensable, party under RCFC 19. The FDIC cites its duties as receiver of the claims of the failed thrift, 12 U.S.C. § 1823(d)(3) (1994), and its right to assert claims of the failed thrift, *Plaintiffs in*

---

1. The court does not reach the issue of whether the FDIC properly may claim entitlement to any damages beyond those already disclosed during discovery.

2. The claims at issue are as follows: (1) expectancy damages of $30.4 million; (2) restitution of $45.3 million; and (3) reliance damages of $14.6 million. Each claim is presented on a different theory, and plaintiffs cannot recover on all theories. *Cal. Fed.*, 245 F.3d at 1348–49. Though

plaintiffs may recover both restitution and any "non-overlapping" reliance damages, *see California Fed. Bank v. United States*, 43 Fed.Cl. 445, 450 (1999), the most plaintiffs could recover here is $45.3 million in restitution, plus $14.6 million in reliance damages, for a total of $59.9 million. The most the FDIC could recover is $45.3 million in restitution, plus $16,850,228.00 in reliance damages, for a total of $62,150,228.00.

*All Winstar–Related Cases,* 44 Fed.Cl. at 8, as mandating the conclusion that the FDIC as "the receiver is an indispensable party in a shareholder derivative suit on behalf of a corporation in receivership." *First Hartford Corp. Pension Plan & Trust v. United States,* 50 Fed.Cl. 1, 2 (2001). While the parties do not contest the FDIC's rights to bring a claim on behalf of the thrift, and the court does not reject the principles adopted in *First Hartford,* that case is distinguishable because the entire claim of shareholder plaintiffs in that case was derivative. *Id.* at 1. That is not the situation presented in the case at bar.

The FDIC does not explain how, assuming that plaintiffs' claims more properly are bought by the FDIC, a procedural device, such as Rule 19, creates a substantive right in claims that are nonjusticiable under *Landmark* and *Glass.* The mere fact that those cases may have left open the issue of dismissal does not relieve the FDIC of its burden to show why it should not be dismissed as a party. Assuming that the FDIC owned plaintiffs' claims, and assuming that the FDIC were the only party to the case, the FDIC still would be dismissed for lack of standing. The fact that some of plaintiffs' claims merely may be derivative does not confer the FDIC with standing when the amount of those derivative claims does not exceed the Government's counterclaim. *FDIC,* 51 Fed.Cl. at 276 ("the FDIC cannot piggyback its non-justiciable claims onto the Shareholder Plaintiffs' non-viable claims").

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion is granted. Pursuant to RCFC 54(b), and there being no just cause for delay, the Clerk of the Court shall enter an order dismissing the FDIC.

2. Plaintiffs and defendant shall file a Joint Status Report by February 28, 2002, proposing a schedule for all pretrial proceedings and trial, with trial to commence no later than November 4, 2002.