**FIRST ANNAPOLIS BANCORP, INC., Plaintiff,**

and

**Federal Deposit Insurance Corporation, Plaintiff–Intervenor,**

v.

**UNITED STATES, Defendant.**

No. 94–522C.

United States Court of Federal Claims.

April 14, 2003.

Dale A. Cooter, Cooter, Mangold, Tompert & Wayson, L.L.P., Washington, D.C., for the plaintiff.

Ellis Merritt, Jr., Federal Deposit Insurance Corporation Legal Division, John A. Stewart, John V. Thomas, Associate General Counsels, Washington, D.C., for plaintiff-intervenor.

James L. Anderson and Daniel D. McClain, Trial Attorneys, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, United States Department of Justice, Civil Division, Commercial Litigation, Washington, D.C., for defendant.

## ORDER

HORN, Judge.

On November 27, 2002, the court issued an opinion in the above captioned case dismissing the Federal Deposit Insurance Corporation's (FDIC) complaint for failure to establish a case-or-controversy within Article III of the Constitution. *First Annapolis Bancorp, Inc. v. United States*, 54 Fed.Cl. 529, 547 (2002). Among the issues addressed, the court held that adjudication of the plaintiff-intervenor's claims would not affect any party other than the government, and that, therefore, the plaintiff-intervenor did not establish a case-or-controversy within Article III of the Constitution. *Id.* at 546–47. The

court held that even if the FDIC recovered all of the damages it requested, and even if the FDIC was correct in its interpretation of the statute governing how those damages would flow through the receivership, there was still no possibility that any third parties would receive any money. *Id.* Subsequent to the court's decision, the FDIC filed a motion for reconsideration of the court's opinion.

## FINDINGS OF FACT

The events that precipitated this and the other *Winstar*-related cases were described in the plurality opinion of the United States Supreme Court in *United States v. Winstar Corp.*, 518 U.S. 839, 844–48, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). This court's November 27, 2002 opinion in the instant case provides the factual background specific to the claims of the plaintiff and plaintiff-intervenor. *See First Annapolis Bancorp, Inc. v. United States*, 54 Fed.Cl. at 530–36. For purposes of the plaintiff-intervenor's motion for reconsideration, however, the court will review those facts necessary for the resolution of the plaintiff-intervenor's motion.

The plaintiff, First Annapolis Bancorp, Inc. (Bancorp), as the former holding company of the converted First Federal Savings & Loan Association of Annapolis (First Federal I), filed its complaint in this *Winstar*-related case on August 10, 1994, claiming damages pursuant to various contractual and Fifth Amendment taking theories of recovery. According to the Bancorp's complaint:

This action arises out of an agreement entered into on or about August 12, 1988, between the plaintiff, on the one hand, and the Federal Savings and Loan Insurance Corporation ("FSLIC") and FSLIC's operating head, the Federal Home Loan Bank Board ("FHLBB"), on the other, and the abrogation and frustration of that agreement by the government following enactment of the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183.

Bancorp's complaint further alleged:

The transaction sued upon had its genesis in the government's desire to find an alternative to the liquidation, at great cost to the United States, of First Federal Savings & Loan Association of Annapolis ("First Federal"). To avoid the millions of dollars in liability to depositors that FSLIC would have been required to pay upon the failure of that institution, the government induced the creation of a holding company that would sell its stock to investors and use the capital from that sale to acquire First Federal, which then merged with an interim association to create First Annapolis Savings Bank, F.S.B. ("First Annapolis"). Because the new institution would still have been insolvent even after this infusion of capital, the government agreed with First Annapolis Bancorp, Inc. to count supervisory goodwill as part of regulatory capital and further agreed that certain capital benchmarks in a five-year business plan (benchmarks that fell short of the otherwise-applicable regulatory capital requirements) would, if met by the institution, be treated as meeting regulatory capital requirements.

The plaintiff invested approximately $14 million pursuant to this agreement with the United States, only to have the government destroy the consideration underlying the agreement by refusing to treat supervisory goodwill as capital and cause First Annapolis to be placed in receivership, thereby confiscating plaintiff's investment.

Plaintiff-intervenor, FDIC, as the receiver of First Annapolis and then the receiver of First Federal Savings Bank of Annapolis (First Federal II), filed its complaint on March 28, 1997. The FDIC's complaint requested the following relief:

That the Court declare that the provisions of FIRREA and the OTS [Office of Thrift Supervision] regulations restricting the Agreed Modifications constitute repudiation, breach and abrogation of Plaintiff Intervenor's valid contract rights, effect a taking of Plaintiff Intervenor's property without just compensation and a deprivation Plaintiff Intervenor's property without due process of law, in violation of the Fifth Amendment to the United States Constitution and that Plaintiff Intervenor be awarded damages in an amount to be established at trial, including without limita-

tion, the loss of going concern values and any consequential damages resulting from the closure of New First Annapolis [First Annapolis];

That the Court order that Plaintiff Intervenor be granted monetary relief in an amount sufficient to compensate it for all monies expended and costs incurred by Plaintiff Intervenor, and for the value of all benefits conferred on defendant, through the conversion and merger of Old First Annapolis [First Federal I] and the operation and management of New First Annapolis in an amount consistent with the evidence presented at trial.

In its original opinion, the court found that First Federal I converted from a federal mutual savings and loan association to a stock savings institution based on the documents executed by First Federal I, First Annapolis Savings Bank, F.S.B. (First Annapolis), Bancorp, and the Federal Home Loan Bank Board (FHLBB). The purposes of the agreements between the FHLBB, Bancorp, First Federal I, and First Annapolis was to prevent First Federal I from suffering further financial losses that threatened the viability of the institution. Once converted into a stock savings bank, First Federal I merged with, and into the newly-formed federal stock savings bank, First Annapolis. Concurrent with these events, the plaintiff, Bancorp, was formed for the purpose of acquiring the stock of First Annapolis. The purpose of the formation of Bancorp and its acquisition of the First Annapolis stock was for the infusion of at least $11 million into the thrift. With the infusion of the $11 million in capital by Bancorp, and the granting of certain regulatory forbearances and special accounting treatment of regulatory goodwill realized from the merger of First Federal I and First Annapolis authorized by the FHLBB, the parties to the transactions envisioned First Annapolis becoming a successful banking institution. In the court's November 27, 2002 opinion, the court found:

> The purpose of the amortization of goodwill realized from the merger of the institutions' stock was to "enable the preservation of capital of the new investors [Bancorp shareholders] and prevent impairment for the significant deficit being assumed by the investors in the recapitalization of the Association [First Federal I]."

*First Annapolis Bancorp, Inc. v. United States*, 54 Fed.Cl. at 532–33. The court's November 27, 2002 opinion also noted that the preservation of Bancorp's $11 million of invested capital was to be accomplished by the amortization of regulatory goodwill and the use of modified regulatory capital requirements, approved by the FHLBB. The FHLBB gave its final approval of the transactions on February 9, 1989.

Due to continued financial difficulties at the converted and merged entity, First Annapolis, the Office of Thrift Supervision (OTS) appointed the Resolution Trust Corporation (RTC) as the sole receiver for First Annapolis on May 31, 1990. The OTS also issued a federal charter for First Federal II, allowing the RTC, as a conservator, to operate First Federal II as a new thrift for the purpose of managing and controlling the assets and liabilities of the failed First Annapolis. Although other intervening events occurred which were described in depth in the court's November 27, 2002 opinion, for purposes of the defendant-intervenor's motion, following the RTC conservatorship of First Federal II, the thrift continued to suffer financial failure, and First Federal II was closed on May 3, 1991. Pursuant to 12 U.S.C. § 1441a(m) (1994), the RTC was abolished on December 31, 1995 and if the RTC was acting as a conservator or receiver at that time, the FDIC succeeded the RTC as conservator or receiver. *See* 12 U.S.C. § 1441a(m)(1). Subsequent to First Federal II's failure, the FDIC, as the successor to the rights of First Annapolis (later First Federal II), filed its complaint in this court.

## DISCUSSION

The FDIC cites Rule 59 of the Rules of the United States Court of Federal Claims (RCFC) for its motion for reconsideration and asks the court to "reconsider its decision of November 27, 2002." RCFC 59(a)(1) provides that reconsideration "may be granted to all or any of the parties and on all or part of the issues, for any of the reasons estab-

lished by the rules of common law or equity applicable as between private parties in the courts of the United States."

■ The United States Court of Appeals for the Federal Circuit has stated that: "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990); *reh'g denied. See Citizens Fed. Bank, FSB, et al. v. United States,* 53 Fed.Cl. 793, 794 (2002) (citing *Yuba Natural Res., Inc. v. United States,* 904 F.2d at 1583). To prevail, a motion for reconsideration "must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Circle K Corp. v. United States,* 23 Cl.Ct. 659, 664–65 (1991). *See also Ammex, Inc. v. United States,* 52 Fed.Cl. 555, 557 (2002); *Stelco Holding Co. v. United States,* 42 Fed.Cl. 156, 157 (1998); *Principal Mut. Life Ins. Co. v. United States,* 29 Fed.Cl. 157, 164 (1993), *aff'd,* 50 F.3d 1021 (Fed.Cir.1995); *reh'g denied.* In order to prevail on a motion for reconsideration, the movant must show either that: (a) an intervening change in the controlling law has occurred; (b) evidence not previously available has become available; or (c) that the motion is necessary to prevent manifest injustice. *See Bishop v. United States,* 26 Cl.Ct. 281, 286 (1992); *see also Strickland v. United States,* 36 Fed.Cl. 651, 657 (1996). "A court, therefore, will *not* grant a motion for reconsideration if the movant 'merely reasserts ... arguments previously made ... all of which were carefully considered by the Court.'" *Ammex, Inc. v. United States,* 52 Fed.Cl. at 557 (quoting *Principal Mut. Life Ins. Co. v. United States,* 29 Fed.Cl. at 164) (emphasis in original). *See Frito–Lay of P.R., Inc. v. Canas,* 92 F.R.D. 384, 390 (D.P.R.1981).

■ The FDIC's motion claims that "[t]he controlling question on this motion for reconsideration is who owns the $53.9 million lost profit claim being advanced by Shareholder Plaintiff, but based on lost profits of the failed First Annapolis Savings Bank, F.S.B." The FDIC argues that the issue of claim ownership gives rise to a case-or-controversy that allows the court to exercise jurisdiction.

The FDIC's motion for reconsideration claims ownership of Bancorp's claim for lost profits and terms Bancorp's lost profits claim as a derivative suit by the shareholders of the failed thrift, First Annapolis, and then First Federal II.

The FDIC, however, "provides no authority for the proposition that it can satisfy the case or controversy requirement by converting its dispute against defendant to a dispute over ownership of claims against plaintiff, contrary to the claims set out in its complaint." *Westfed Holdings, Inc. v. United States,* 52 Fed.Cl. 135, 144 (2002). Moreover, in the case at bar, the FDIC fails to recognize and address the factual findings of the court's November 27, 2002 opinion. The court's November 27, 2002 opinion found that Bancorp was a party to the agreements between First Federal I, First Annapolis, and the FHLBB. *See First Annapolis Bancorp, Inc. v. United States,* 54 Fed.Cl. at 532. As quoted above, the court's November 27, 2002 opinion found:

> The purpose of the amortization of goodwill realized from the merger of the institutions' stock was to "enable the preservation of capital of the new investors [Bancorp shareholders] and prevent impairment for the significant deficit being assumed by the investors in the recapitalization of the Association [First Federal II]."

*First Annapolis Bancorp, Inc. v. United States,* 54 Fed.Cl. at 532–33. The court's November 27, 2002 opinion also found that the preservation of Bancorp's $11 million of invested capital was accomplished by the amortization of goodwill and the use of modified regulatory capital requirements, approved by the FHLBB. The court's November 27, 2002 opinion found that the Bancorp's complaint filed in this *Winstar*-related case on August 10, 1994, claimed damages pursuant to various contractual and Fifth Amendment taking theories of recovery. According to the plaintiff's complaint, the claims brought by Bancorp arose "out of an agreement entered into on or before August 12, 1988, between the plaintiff, on the one hand, and the Federal Savings and Loan Insurance Corporation ('FSLIC') and FSLIC's operat-

ing head, the Federal Home Loan Bank Board ('FHLBB')." The complaint also stated that:

> [T]he government agreed with First Annapolis Bancorp, Inc. to count supervisory goodwill as part of regulatory capital and further agreed that certain capital benchmarks in a five-year business plan (benchmarks that fell short of the otherwise-applicable regulatory capital requirements) would, if met by the institution, be treated as meeting regulatory capital requirements.

Finally Bancorp's complaint alleged that "[t]he plaintiff invested approximately $14 million pursuant to this agreement with the United States, only to have the government destroy the consideration underlying the agreement by refusing to treat supervisory goodwill as capital and cause First Annapolis to be placed in receivership, thereby confiscating plaintiff's investment."

In contrast, the FDIC's complaint brought its claims as the receiver of First Annapolis, the failed, converted thrift, and then as the receiver of First Federal II. The FDIC's complaint identified the plaintiff-intervenor's contract rights and the alleged taking of plaintiff-intervenor's property. The FDIC's complaint does not allege a claim for lost profits.

The United States Court of Appeals for the Federal Circuit's decision in *Landmark Land Co. v. United States*, 256 F.3d 1365 (Fed.Cir.2001), *reh'g and reh'g en banc denied*, addressed the relation of the FDIC's claims to the plaintiff's claims after the court determined that any recovery by the FDIC would fail to satisfy the case-or-controversy requirement, and held that:

> The FDIC's claims raised upon intervention are unrelated to those brought by the original plaintiff, Landmark. Landmark's claims are distinct from those brought by the FDIC, and have been adjudicated without regard to them. ... Because the actual controversy presented in this case—Landmark's claims—may be fully adjudicated without regard to the FDIC's claims, adjudication of the FDIC's claims would not be in accordance with the case-or-controversy requirement.

*Id.* at 1382. As discussed in this court's November 27, 2002 opinion, the plaintiff Bancorp has brought separately identified claims based on the alleged contract entered into by Bancorp and the government. The plaintiff Bancorp's complaint does not allege claims on behalf of the failed thrift. Bancorp has brought its claims as direct claims against the United States for breach of Bancorp's contract and property rights, not those of any other party, including First Annapolis or its successor, First Federal II. This court found that the FDIC's complaint does not establish a case-or-controversy within Article III of the Constitution. The question whether the FDIC would have an interest in any damages recovered by the plaintiff, Bancorp, does not create the case-or-controversy required for standing in this court.

Moreover, the United States Court of Federal Claims has rejected similar arguments in *Winstar*-related cases in which the FDIC attempts to create a case-or-controversy by converting its dispute with the defendant into a dispute over claim ownership with the plaintiff. The FDIC's argument, however, cannot displace "the standing doctrine [which] requires that adversity be present between the FDIC and the Government in the circumstances of this case." *Hansen BanCorp, Inc. v. United States*, 51 Fed.Cl. 679, 681 (2002); *see also FDIC v. United States*, 51 Fed.Cl. 265, 276 (2001) ("Nor can the FDIC remain in the case as a necessary party or as an intervener merely because the Shareholder Plaintiffs have a separate breach claim against the United States."); *Admiral Fin. Corp. v. United States*, 51 Fed.Cl. 366, 368 (2002) ("FDIC has cited no other authority for the concept that a plaintiff suing a defendant against which it has no adverse interest, can nonetheless satisfy the case-or-controversy requirement by asserting it has a dispute with another plaintiff."); *Westfed Holdings, Inc. v. United States*, 52 Fed.Cl. at 144 ("Even if Westfed had only derivative claims, FDIC provides no authority for the proposition that it can satisfy the case or controversy requirement by converting its dispute against defendant to a dispute over ownership of claims against plaintiff, contrary to the claims set out in its com-

plaint."); *Cain v. United States,* 53 Fed.Cl. 658, 666 (2002) ("Likewise this Court has consistently rejected Plaintiff FDIC's contention, as it continues to make here, that squabbling among co-plaintiffs is converted into a claim that the Court of Federal Claims possesses subject matter jurisdiction to adjudicate.").

## CONCLUSION

Because this court's November 27, 2002 opinion addressed the separate and distinct claims for breach of contract and a Fifth Amendment taking brought by the plaintiff, Bancorp, from those of the plaintiff-intervenor, FDIC, the FDIC should not be allowed to create a case-or-controversy over a dispute between claim ownership with the plaintiff, Bancorp. Therefore, the FDIC's motion for reconsideration of the court's November 27, 2002 opinion is **DENIED.**

**IT IS SO ORDERED.**