HANSEN BANCORP, INC., Elmer F. Hansen, Jr., and G. Eileen Hansen, Plaintiffs–Appellees,

and

Federal Deposit Insurance Corportion, Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 02–5078.

United States Court of Appeals, Federal Circuit.

DECIDED: June 2, 2003.

Before MAYER, Chief Judge, SCHALL, and DYK, Circuit Judges.

### DECISION

SCHALL, Circuit Judge.

The Federal Deposit Insurance Corporation ("FDIC") appeals the decision of the United States Court of Federal Claims that dismissed it from this *Winstar*-related action for lack of standing based on our decision in *Landmark Land Co., Inc. v. United States*, 256 F.3d 1365 (Fed.Cir. 2001) (*"Landmark"*). *Hansen Bancorp, Inc. v. United States*, 51 Fed.Cl. 679, 680 (2002). We today decide *Admiral Financial Corp. v. United States*, 329 F.3d 1372. In *Admiral Financial*, based upon the holding in *Landmark*, we hold that where the sum of (i) the FDIC's claim and (ii) restitution claims being asserted by the co-plaintiff—which the FDIC asserts it owns—is less than the amount the failed thrift owes to the government as a priority claim, the case-or-controversy requirement of Article III, Section 2 of the Constitution is not satisfied as to the FDIC. Consequently, the FDIC lacks standing and must be dismissed from the case. *Admiral Financial*, 329 F.3d at 1382, slip op. at 20. This case is controlled by *Admiral Financial*. We therefore *affirm*.

## DISCUSSION

### I.

This and other *Winstar*-related cases involve claims against the government stemming from the "thrift" crisis of the early 1980s. Eventually, that crisis resulted in the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), Pub. L. No. 101–73, 103 Stat. 183 (1989). *Admiral Financial* sets forth the background necessary for an understanding of the issues involved in the FDIC's intervention in certain *Winstar*-related cases. With that background in hand, we turn to the facts of this case.

### II.

In 1987, Raritan Valley Savings and Loan Association ("Raritan") submitted a proposal to the Federal Savings and Loan Insurance Corporation ("FSLIC") to acquire First Federal Savings and Loan Association of Hammonton ("Hammonton"). Raritan was a stock-form savings and loan association, with Elmer F. Hansen and G. Eileen Hansen owning 99.9% of its outstanding stock.

In 1988, FSLIC accepted Raritan's proposal. To accomplish the proposed acquisition, a holding company, Hansen Bancorp, Inc. ("Hansen Bancorp"), was formed to hold the thrift resulting from the merger between Raritan and Hammonton, called Hansen Savings Bank, SLA ("Hansen Bank"). Following the merger, the Hansens owned 100% of the stock of Hansen Bancorp, which in turn owned all of the stock of Hansen Bank.

In connection with the Raritan–Hammonton merger and the creation of Hansen Bank, the Hansens, Raritan, and FSLIC entered into an Assistance Agreement on May 25, 1988, pursuant to which FSLIC provided $62 million to Hansen Bank and the Hansens personally provided $1 million. That same day, the Federal Home Loan Bank Board sent a letter to Raritan authorizing Hansen Bank to amortize certain intangible assets, such as goodwill, arising from the acquisition "over a period not to exceed twenty five (25) years by the straight line method."

On August 9, 1989, Congress enacted FIRREA. Among other things, FIRREA restricted the ability of thrifts to use intangible assets, such as goodwill, to meet new regulatory capital requirements. *Admiral Financial*, 329 F.3d at 1373–1374, slip op. at 3–4. Following the enactment of FIRREA, Hansen Bank fell out of capital compliance, and the Office of Thrift Supervision ("OTS") appointed the Resolution Trust Corporation ("RTC") as its receiver. As receiver, RTC succeeded to all of Hansen Bank's assets, including any legal claims it possessed. *Id.* at 1374–1375, 5. OTS also issued a charter for a new institution called Hansen Federal Savings Association ("Hansen Federal") and appointed RTC as conservator. In due course, pursuant to a purchase and assumption agreement, all of the assets and most of the liabilities from the Hansen Bank receivership were transferred to Hansen Federal. On April 14, 1994, OTS appointed RTC as receiver for the purpose of liquidating Hansen Federal's assets. To accomplish this task, RTC advanced Hansen Federal approximately $144 million so that Hansen Federal could compensate Collective Federal Savings Bank ("Collective") for assuming the excess of Hansen Federal's deposit liabilities over its assets. Pursuant to 12 U.S.C. § 1821(d)(11), the RTC thereby became the "priority" creditor of Hansen Federal in the amount of $144 million (currently $71 million). At the same time, as receiver, the RTC came into possession of the assets of Hansen Federal, including its legal claims.

When the RTC went out of existence on December 31, 1995, all the assets held by the RTC were placed in the FSLIC Resolution Fund ("FRF"). *Admiral Financial,* 329 F.3d at 1374–1375, slip op. at 4–5. As a result, FRF, managed by the FDIC acting in its corporate capacity, became (1) the prosecutor of the legal claims of Hansen Federal, having acquired the legal claims from the RTC; (2) the judgment payer in this case, having assumed FSLIC's liabilities; and (3) the priority creditor of the Hansen Federal receivership because of the cash advanced to cover the deposit liability of Hansen Federal.

### III.

Hansen Bancorp, Elmer F. Hansen, Jr., and G. Eileen Hansen (collectively "Hansen") filed suit in the Court of Federal Claims on December 3, 1992. In their complaint, they alleged that the enactment ·of FIRREA breached their agreement with the United States and that because of this they were entitled to expectancy damages of $30.4 million, restitution damages of $45.3 million, or reliance damages of $14.6 million.

On March 14, 1997, the Court of Federal Claims granted the FDIC's motion to intervene in the case. *Plaintiffs in All Winstar–Related Cases at the Court v. United States,* 44 Fed.Cl. 3, 4 (1999). On March 25, 1997, the FDIC filed its complaint in intervention. In its complaint, the FDIC alleged, as successor to the rights of Hansen Federal, both Fifth Amendment taking and breach of contract claims. On its breach of contract claims, the FDIC has advanced alternative damages theories. The maximum recovery sought by the FDIC is in the amount of $16,850,228. In addition, the FDIC asserts ownership of certain Hansen claims.

Eventually, the parties filed motions for partial summary judgment on the issue of liability. In due course, the Court of Federal Claims determined that the government was liable to both the FDIC and Hansen for breach of contract. *Hansen,* 49 Fed.Cl. 168, 171 (2001). However, following the court's decision on liability, we decided *Landmark.* After briefing by the FDIC and the government on *Landmark,* the Court of Federal Claims concluded that the FDIC's claims failed to meet Article III's case-or-controversy requirement. Consequently, the court dismissed the FDIC for lack of standing. *Hansen Bancorp,* 51 Fed.Cl. at 680. The court stated:

> The Federal Circuit in *Landmark* held that the FDIC lacked standing because, on the facts of that case, the Government's counterclaim against shareholders represented by the FDIC exceeded the FDIC's claim against the Government. Because the ultimate disposition of the case merely would involve the shifting of funds from one Government fund to another, the FDIC and the Government were not adverse parties, and the FDIC therefore did not satisfy the case-or-controversy requirement of Article III, Section 2 of the Constitution.

*Id.* (citations omitted).

Turning to the case at hand, the Court of Federal Claims noted that the FDIC was asserting four alternative damages theories, the largest of them being in the amount of $16,850,228. The court pointed out that because that amount was well below the government's $71 million dollar priority claim arising from the FDIC's advance of funds to Hansen Federal, *Landmark* compelled the holding that the FDIC lacked standing. *Id.* The court was not persuaded by the FDIC's argument that it should not apply *Landmark* until the court decided whether the FDIC or the plaintiffs owned certain disputed claims and the full extent of the FDIC's claims was thereby known. The court pointed out that the

most Hansen could recover was $45.3 million in restitution, plus $14.6 million in reliance damages, for a total of $59.9 million. At the same time, the most the FDIC could recover was $45.3 million (the total amount of the Hansen restitution claim, assuming it properly belonged to the FDIC), plus the FDIC's claim of $16,850,228 in reliance damages that it was asserting as successor to Hansen Federal, for a total of $62,250,228, a sum less than the government's priority claim of $71 million. The court stated:

> Assuming that the FDIC owned plaintiffs' claims and assuming that the FDIC were the only party to the case, the FDIC still would be dismissed for lack of standing. The fact that some of plaintiffs' claims merely may be derivative does not confer the FDIC with standing when the amount of those derivative claims does not exceed the Government's counterclaim.

*Id.* at 682. Accordingly, by order dated February 6, 2002, the Court of Federal Claims dismissed the FDIC for lack of standing and entered a judgment of dismissal pursuant to RCFC 54(b). *Id.* at 682. The FDIC timely appealed to us. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).[1]

### IV.

This case is controlled by our decision in *Admiral Financial*, in which we apply the holding in *Landmark* that "where the FDIC has not asserted claims for recovery in excess of what the failed thrift owes the government, the case-or-controversy requirement is not satisfied." 256 F.3d at 1382. In *Admiral Financial*, the FDIC appealed the decision of the Court of Federal Claims dismissing it as intervenor for lack of standing based upon our decision in

*Landmark*. The factual difference between *Landmark* and *Admiral Financial* is that in *Landmark* there was a determination in the trial court as to the ownership of the respective claims being asserted by Landmark Land Company and the FDIC. In *Admiral Financial*, there was not such a determination. However, applying the holding of *Landmark*, the Court of Federal Claims held that the case-or-controversy requirement was not met because, even assuming that the FDIC was the proper owner of the claims being asserted by plaintiff Admiral Financial Corporation, the sum of those claims and the claims being asserted by the FDIC on behalf of the failed thrift still was less than the priority claim of the government arising from the advance of money to the thrift to satisfy deposit liabilities. *Admiral Fin. Corp. v. United States,* 51 Fed. Cl. 366, 367 (2002). In our opinion issued today in *Admiral Financial*, we affirm the decision of the Court of Federal Claims dismissing the FDIC as intervenor. In so doing, we hold as follows:

> Under the holding in *Landmark*, in a case such as the present one, the critical question is whether claims being asserted by the FDIC and claims being asserted by the plaintiff—which the FDIC also asserts are derivative claims—total less than the government's priority claim arising from advances made to satisfy deposit liabilities of the failed thrift. If they do, the case-or-controversy requirement is not met and the FDIC lacks standing. It is not necessary to determine the correct ownership of claims being asserted by the plaintiff that the FDIC asserts it owns as successor to the failed thrift.

---

1. As we do in *Admiral Financial,* we reject the government's argument that we should dismiss the FDIC's appeal for lack of standing.

*Admiral Financial,* 329 F.3d at 1382, slip op. at 19.

This case presents the same pattern of facts that exists in *Admiral Financial* As noted above, the Court of Federal Claims based its dismissal of the FDIC on the fact that the most the FDIC could possibly recover in this case was $62,250,228, a sum less than the government's priority claim of $71 million. Under *Admiral Financial,* that fact compels our affirmance of the trial court's decision.[2]

For the foregoing reasons, the decision of the Court of Federal Claims dismissing the FDIC for lack of standing is affirmed.

**2.** After the Court of Federal Claims dismissed the FDIC, on October 10, 2002, it entered final judgment as to Hansen's claims and damages theories. In that final judgment, the court awarded Hansen $1 million in connection with its breach of contract claim. *Hansen Bancorp v. United States,* 53 Fed.Cl. 92, 111 (2002), as amended by Order filed October 4, 2002. An appeal by Hansen is pending.